**UNITED STATES DEPARTMENT OF the NAVY, NAVAL AVIATION DEPOT, CHERRY POINT, NORTH CAROLINA,** Petitioner,

v.

**FEDERAL LABOR RELATIONS AUTHORITY,** Respondent.

No. 91–1123.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 15, 1991.

Decided Jan. 14, 1992.

---

**6.** We express no opinion as to further relief the ICC may provide Guardian.

Mark W. Pennak, Atty. U.S. Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and William Kanter, Atty., Washington, D.C., were on the brief, for petitioner.

Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, with whom William E. Persina, Sol., William R. Tobey, Deputy Sol., and Jill A. Griffin, Atty., Washington, D.C., were on the brief, for respondent.

Before: EDWARDS, RUTH B. GINSBURG and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The United States Department of the Navy ("Navy") petitions for review of a decision and order of the Federal Labor Relations Authority ("Authority" or "FLRA") requiring the Navy to bargain with the International Association of Machinists and Aerospace Workers, Local Lodge 2297 ("Local 2297"), one of the unions at its Cherry Point, North Carolina,

installation, regarding two proposals made by Local 2297. The first contested proposal seeks to compel the Navy to allow Local 2297 employees to compete for promotions at *all* Cherry Point facilities; it would also allow all persons not in the Local 2297 unit to bid on positions throughout the Cherry Point installation. The second disputed proposal calls for the establishment of an "open" parking policy for *all* employees and supervisory personnel working at the Cherry Point installation.

In holding the two proposals to be within the Navy's duty to bargain under the Federal Service Labor–Management Relations Statute ("FSLMRS"), 5 U.S.C. §§ 7101–7135 (1988), the Authority purported to apply a "vitally affects" test borrowed from private sector labor law. In so doing, the FLRA determined that the proposals were subject to mandatory bargaining, notwithstanding their impact on non-bargaining unit personnel, because they significantly and materially affected the conditions of employment of bargaining unit members. *International Ass'n of Machinists & Aerospace Workers Local Lodge 2297*, 38 F.L.R.A. 1451 (1991) ("*IAM Local 2297*"). We agree with the Navy that the Authority's decision is infected with legal error.

We find that the Authority's construction and application of the "vitally affects" test is inconsistent with the FSLMRS, the Authority's own precedents and the private sector labor law principles upon which the Authority purported to rely. We further hold that, under the FSLMRS, the union proposals at issue in this case cannot be found to be within the scope of mandatory bargaining to the extent that they seek to regulate the conditions of employment of employees in other bargaining units and supervisory personnel. Accordingly, we vacate the Authority's order and remand for further proceedings.

## I. BACKGROUND

The instant petition—styled a "test case" by the Navy—presents for review the pro-

priety of the Authority's adoption, construction and application of the "vitally affects" test. The Authority adopted the test as a result of a prior litigation that came before this court on three separate occasions. Indeed, to the extent that we find legal error in this case, we must shoulder at least partial responsibility for it: some of the Authority's missteps in this case have been prompted by prior directions from this court.

### A. The Prior Litigation

The Authority's adoption of a so-called "vitally affects" test had its genesis in two prior decisions of this court. *See American Fed'n of Gov't Employees, Local 32 v. FLRA*, 853 F.2d 986 (D.C.Cir.1988) ("*AFGE II*"); *Local 32, Am. Fed'n of Gov't Employees v. FLRA*, 774 F.2d 498 (D.C.Cir. 1985) ("*AFGE I*"). The issue in those cases was whether the Authority properly determined that union proposals defining the "competitive area"[1] for reductions-in-force were not within the duty to bargain, on the ground that the proposals would affect non-bargaining unit employees. In *AFGE I*, 774 F.2d at 502–04, we vacated the Authority's decision of non-negotiability, holding that the Authority had failed to explain its departure from prior precedent and had neglected to consider the "vitally affects" test applicable in private labor law. *See Allied Chem. & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 178–79, 92 S.Ct. 383, 397, 30 L.Ed.2d 341 (1971) ("*Pittsburgh Plate Glass*") (describing the private sector test). On remand, the Authority applied a balancing test—weighing the unions' right to negotiate about the proposals against the agencies' right to set the terms of employment of non-bargaining unit employees—and, finding that the balance tipped in the agencies' favor, adhered to its prior decision. The affected unions again sought appellate review, and this court again vacated and remanded. We held that the Authority's balancing test was incon-

---

**1.** The competitive area is the part of the agency within which an employee whose job is eliminated may compete with other employees to determine which of them will be retained in the agency. *See International Fed. of Professional & Technical Eng'rs*, 8 F.L.R.A. 212 (1982).

sistent with the FSLMRS, and we again suggested that the Authority consider adopting the "vitally affects" test. *See AFGE II*, 853 F.2d at 991–93.

On remand a second time, the Authority heeded this court's suggestion and adopted a "vitally affects" test. *Office of Personnel Management*, 33 F.L.R.A. 335 (1988) ("*OPM*"). The Authority held that, after reconsidering the issue, it had decided to "adopt the private sector [vitally affects] test used by the NLRB." *Id.* at 337. Translating the test into the framework of the FSLMRS, the Authority held:

> We will find that a proposal is within the duty to bargain under the Statute [FSLMRS] if it (1) vitally affects the working conditions of unit employees, and (2) is consistent with applicable law and regulations. We no longer will examine the effect of the proposal on non-unit employees or positions.

*Id.* at 338. The Authority went on to conclude that the competitive area proposal before it vitally affected the working conditions of bargaining unit employees and therefore was within the duty to bargain, notwithstanding the effect of the proposal on non-unit employees. *Id.* at 338–39.

The agencies affected by the *OPM* decision petitioned for review, and the matter came before this court for the third time. *See United States Office of Personnel Management v. FLRA*, 905 F.2d 430 (D.C.Cir.1990) ("*AFGE III*"). The agencies argued on appeal that the Authority erred by adopting the "vitally affects" test and that it had applied the test incorrectly. We declined to reach the merits of these contentions because the agencies had not raised them before the Authority; accordingly, we enforced the Authority's bargaining orders. *See id.* at 433–35.

Subsequent to *AFGE III*, the Authority has continued to apply and refine the "vitally affects" test—this case being only one of several examples. Because of the procedural posture in which *AFGE III* reached this court, the instant petition represents the first time that the merits of the Authority's adoption and construction of the "vi-

tally affects" test have come before this court for review.

### B. *Facts*

The facts of this case are straightforward and essentially undisputed. The Navy operates an installation at Cherry Point, North Carolina. That installation is composed of three facilities: the Naval Aviation Depot, the Marine Corps Air Station and the U.S. Naval Hospital. There are nine separate bargaining units at the installation. The largest of these is the Local 2297 unit, which covers 1,959 (57%) of the 3,410 unionized employees at Cherry Point. All Local 2297 employees work at the Naval Aviation Depot.

In the negotiations at issue here, Local 2297 submitted two proposals to the Navy and requested bargaining. The proposals are set out in the Appendix to this opinion, with the disputed portions highlighted. Briefly stated, Proposal One would compel the Navy to allow Local 2297 employees to compete for promotions at *all* Cherry Point facilities; it would also allow persons not in the Local 2297 unit to bid on positions throughout the Cherry Point installation. Proposal Two would require the Navy to implement an "open" parking policy, permitting parking in any open space by "all employees and the employer on a first come first serve basis." The second proposal also would require reserved parking for Navy executives, union officials and others. *See* Appendix, *infra; see also IAM Local 2297*, 38 F.L.R.A. at 1455, 1461 (describing proposals).

The Navy refused to negotiate over the proposals, maintaining that both were outside the duty to bargain because they would regulate the conditions of employment of non-unit employees and supervisory personnel. In response, Local 2297 filed a complaint with the Authority, asserting that the Navy had violated its duty to bargain in good faith. *See* 5 U.S.C. §§ 7114(a)(4), 7116(a)(5) (1988). The Navy, in its submissions to the Authority, argued that the "vitally affects" test adopted in *OPM* should be reconsidered, that the Authority's construction of the test was

flawed and that the subject matter of the two Local 2297 proposals was not sufficiently "vital" to Local 2297 employees to satisfy the test.

On January 14, 1991, the Authority issued the decision now under review. The Authority rejected the Navy's arguments and, adhering to its ruling in *OPM*, purported to apply a "vitally affects" test. *IAM Local 2297*, 38 F.L.R.A. at 1452. Defining "vital" as "material or significant," the Authority concluded that Proposal One vitally affected bargaining unit members because it would improve appreciably their opportunities for promotion. *Id.* at 1455. The Authority found that Proposal Two also would have a significant and material effect on the bargaining unit because it would bolster employee morale and reduce sick leave by enabling employees to walk shorter distances in inclement weather. *Id.* at 1461. Although recognizing that permitting negotiation on the proposals might restrict the ability of other bargaining units to negotiate about promotions and parking in the future, the Authority concluded that this circumstance went "not ... to the negotiability of ... [each] proposal, but to its merits." *Id.* Having found the "vitally affects" test satisfied, the Authority ordered the Navy to bargain with Local 2297 over both proposals.[2]

The Navy now petitions for review of the Authority's decision.[3] The Navy argues that the Authority erred in adopting a "vitally affects" test, that its construction of the test is inconsistent with the FSLMRS, and that it applied the test erroneously on the facts of this case. We find merit in the Navy's latter two contentions; therefore, we vacate the Authority's order and remand for further proceedings.

## II. DISCUSSION

The FSLMRS instituted a collective bargaining regime in the federal public sector somewhat similar to that established in the private sector by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–169 (1988). Section 7102 of the FSLMRS grants specified federal employees the right to organize and "to engage in collective bargaining with respect to conditions of employment." 5 U.S.C. § 7102(2) (1988). "Employee" is defined by the FSLMRS to include most civilian employees, *see id.* § 7103(a)(2) (1988); management and supervisory personnel are not "employees" under the Statute, however, *see id.*, and may not be part of any bargaining unit. *Id.* § 7112(b)(1) (1988).

The FSLMRS requires agencies to bargain in good faith with employee unions regarding conditions of employment and makes the failure to do so an unfair labor practice. *See id.* §§ 7114(a)(4), 7116(a)(5). Bargaining is defined as

the performance of the mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit ... to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees.

*Id.* § 7103(a)(12). A union, once lawfully recognized as the bargaining agent of an appropriate bargaining unit, is "the *exclusive representative* of the employees in the unit" and is the sole entity entitled to bargain and negotiate on their behalf with respect to conditions of employment. *Id.* § 7114(a)(1) (emphasis added).

■ The issue in this case focuses on the Authority's adoption and use of a "vitally affects" test to define the scope of the Navy's duty to bargain under the FSLMRS. We must defer to the Authority's interpretation of its enabling statute if that interpretation is "reasonable and defensible." *Bureau of Alcohol, Tobacco & Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). Application of this standard of review does not mean, however, that our review is *pro*

---

**2.** The Authority did find, however, that subsection (b)(5) of Proposal Two was not within the scope of bargaining on the ground that it conflicted with a government-wide regulation. *See*

*id.* at 1462; Appendix, *infra* (setting forth proposals).

**3.** The Authority has cross-petitioned for enforcement of its order.

*forma;* Authority decisions that are "incompatible with either the terms or the purpose of the controlling statute, or that conflict with prior FLRA precedent," will be overturned. *AFGE II,* 853 F.2d at 991. Such is the case here.

### A. The Authority's Adoption and Construction of a "Vitally Affects" Test

We recognize that, in *AFGE I* and *AFGE II,* this court encouraged the Authority to adopt a "vitally affects" test of the sort enunciated in *Pittsburgh Plate Glass,* 404 U.S. at 178–79, 92 S.Ct. at 397. In attempting to follow the mandate of the court, however, the Authority has distorted the test beyond recognition. As a consequence of its flawed construction of the test, the Authority has defined the scope of mandatory bargaining under the FSLMRS in a manner that is at once underinclusive and overinclusive—underinclusive because it impermissibly restricts collective bargaining at its core, *i.e.,* with respect to mandatory subjects of bargaining,[4] and overinclusive because it simultaneously expands the duty to bargain to encompass subjects that are outside of the lawful reach of mandatory bargaining. The net result is that the Authority's definition of the scope of bargaining defies the legal limits set by the FSLMRS and the Authority's own precedents. Neither our prior coaxing of the Authority in the direction of the "vitally affects" test[5] nor the deferential standard of review applicable in this case can justify such a result; therefore, we must vacate the Authority's order.

■ We have no quarrel with the Authority's decision to *adopt* the private sector "vitally affects" test. It is true, as the Navy points out, that the FSLMRS cannot be read *"in pari materia"* with the NLRA.

*Fort Stewart Schools v. FLRA,* 495 U.S. 641, 110 S.Ct. 2043, 2047, 109 L.Ed.2d 659 (1990). But it is also true that private labor law concepts may be used to *inform* interpretation of the FSLMRS; indeed, we have so held on several occasions. *See, e.g., AFGE II,* 853 F.2d at 992; *FLRA v. Social Sec. Admin.,* 846 F.2d 1475, 1478 (D.C.Cir.1988); *Library of Congress v. FLRA,* 699 F.2d 1280, 1286 (D.C.Cir.1983). We find nothing in the FSLMRS to suggest that the "vitally affects" test—if properly construed—would be an inappropriate tool to use in defining the scope of mandatory bargaining under the Statute, and the Navy has supplied no convincing reason for thinking otherwise.

■ Although we approve the Authority's decision to adopt the "vitally affects" test, we agree with the Navy that the construction placed upon the test by the Authority is fatally flawed. Under the Authority's construction, the "vitally affects" test is triggered where a proposal regarding the conditions of employment of bargaining unit employees "also *affect[s]* employees or positions outside the unit." *OPM,* 33 F.L.R.A. at 337 (emphasis added). Contrary to the Authority's assertion, *see id.,* this construction is *not* consistent with the private sector "vitally affects" test; nor are the results it produces reconcilable with the FSLMRS or the Authority's own precedents.

Inherent in both the NLRA and the FSLMRS is a fundamental rule that the parties to a bargaining relationship are only *required* to negotiate over "mandatory" subjects of bargaining. Mandatory subjects are those that principally relate to the conditions of employment of bargaining unit employees. *See* 29 U.S.C. § 158(d)

---

4. The Authority's decision suggests that a proposal is within the duty to bargain *only* if it "(1) vitally affects the working conditions of unit employees and (2) is consistent with applicable law and regulations." *IAM Local 2297,* 38 F.L.R.A. at 1454. This is not the law. There has never been any overriding requirement that a union proposal must "vitally affect" the working conditions of unit employees in order to qualify as a bargainable "condition of employment."

5. Because our holding today might be viewed as inconsistent with some of the *dicta* in *AFGE I* and *AFGE II,* this opinion has been circulated to and approved by the entire court, except Judge Silberman and Judge Sentelle, who are recused, and thus constitutes the law of the circuit. *See Irons v. Diamond,* 670 F.2d 265, 268 n. 11 (D.C.Cir.1981).

(1988) (NLRA); 5 U.S.C. § 7103(a)(12) (FSLMRS). The "vitally affects" test serves to define the limited circumstances in which subjects not normally seen to be within the compass of mandatory bargaining—*e.g.*, the terms of a relationship between the employer and a third party—may become mandatory subjects due to their effect on bargaining unit employees.

The "vitally affects" test was first set forth by the Supreme Court in *Pittsburgh Plate Glass*. There, the Court held that the scope of mandatory bargaining generally encompasses "only issues that settle an aspect of the relationship between the employer and employees." 404 U.S. at 178, 92 S.Ct. at 397. The Court noted, however, that although matters solely involving individuals outside the employment relationship normally do not fall within the compass of mandatory bargaining, "they are not wholly excluded." *Id.* A matter involving the employer's relationship with a third party may be subject to mandatory bargaining, the Court held, if such matter "vitally affects the 'terms and conditions' of ... employment" of employees within the bargaining unit. *Id.* at 179, 92 S.Ct. at 398. Thus,

> *Pittsburgh Plate Glass* and its "vitally affects" test provided an avenue for expanding the scope of mandatory bargaining subjects to include issues directly relating to non-employees or other conditions [outside the bargaining unit], so long as a sufficient nexus with the employees' interests can be shown.

CHARLES J. MORRIS, THE DEVELOPING LABOR LAW 765 (2d ed. 1983); *accord Associated Gen. Contractors v. NLRB*, 637 F.2d 556, 559 (8th Cir.1980); *Sperry Sys. Management Div. v. NLRB*, 492 F.2d 63, 69–70 (2d Cir.), *cert. denied*, 419 U.S. 831, 95 S.Ct. 55, 42 L.Ed.2d 57 (1974).

The "vitally affects" test is *not* implicated, however, merely because a union proposal, which is otherwise within the scope of mandatory bargaining, would, if accepted, have *some impact* on persons outside the bargaining unit. As the Supreme Court held in *Ford Motor Co. v. NLRB*, 441 U.S. 488, 99 S.Ct. 1842, 60 L.Ed.2d 420 (1979), where a matter is an "aspect of the relationship" between the employer and the bargaining unit, such that "[n]o third-party interest is directly implicated, ... the standard of *Pittsburgh Plate Glass* has no application." *Id.* at 501, 99 S.Ct. at 1851. Indeed, it is axiomatic that most demands asserted by unions have some impact on non-unit personnel;[6] this fact in no way alters the employer's duty to bargain over mandatory subjects. The "vitally affects" test is relevant, then, *only when a union seeks to bargain over a matter that would not normally be viewed as within the scope of mandatory bargaining. See* CHARLES J. MORRIS, *supra*, at 766–67 (test "has no application to matters involving an employer and bargaining unit employees— it applies only to matters involving individuals or conditions outside the bargaining unit"); *see also AFL–CIO Joint Negotiating Comm. for Phelps Dodge v. NLRB*, 459 F.2d 374, 378 (3d Cir.) ("The fact that a demand may have extra-unit effects does not alter its status as a mandatory subject of bargaining."), *cert. denied*, 409 U.S. 1059, 93 S.Ct. 553, 34 L.Ed.2d 511 (1972).

■ In this case, the Authority construed the "vitally affects" test as being triggered when a "proposal concerning the conditions of employment of bargaining unit employees ... also *affects employees or positions outside the bargaining unit.*" *IAM Local 2297*, 38 F.L.R.A. at 1454 (citing *OPM*, 33 F.L.R.A. at 338) (emphasis added). This construction unduly restricts the duty to bargain under the FSLMRS—it forces a union to show that an otherwise bargainable proposal vitally affects bargaining unit members where the proposal, if adopted, might have *some impact* on non-unit personnel. Such a rule is inconsistent with *Pittsburgh Plate Glass* and *Ford Motor Co.;* it likewise violates the Authority's own precedents by narrowing substantially the scope of mandatory bargaining. *See, e.g., National Treasury Employees Un-*

---

**6.** Many union demands have extra-unit effects; if successful, a demand (*e.g.*, for more parking space) may reduce the available resources of the employer, thereby limiting the concessions that other units can achieve through collective bargaining.

*ion,* 7 F.L.R.A. 275, 283–84 (1981) (proposal regarding procedure for filling vacancies in bargaining unit negotiable despite its effect on non-bargaining unit employees); *see also Service Employees' Int'l Union,* 9 F.L.R.A. 687, 688 (1982) (same).

While unduly constricting the scope of mandatory bargaining in some respects, the Authority's construction of the "vitally affects" test unduly broadens it in others. The Authority's test, as applied, permits a union to seek to regulate, through collective bargaining, the conditions of employment of employees in other bargaining units and management personnel (who are excluded by the FSLMRS from membership in any bargaining unit). Such a result is an incomprehensible application of the "vitally affects" test and, indeed, is flatly at odds with both the FSLMRS and the NLRA. *See* 5 U.S.C. § 7103(a)(12) (agency obliged to bargain with exclusive representative of employees with respect to "conditions of employment *affecting such employees*") (emphasis added); *Service Employees' Int'l Union,* 9 F.L.R.A. at 688 (union proposal that would determine conditions of employment in another bargaining unit outside duty to bargain; "[s]uch a proposal would reach beyond the representation rights of the exclusive representative"); ROBERT A. GORMAN, BASIC TEXT ON LABOR LAW 527 (1976) ("the union may not insist on 'extra-unit' demands"). As aptly expressed by Judge Friendly, "if a union insists on speaking on behalf of persons for whom it cannot properly so insist, an employer cannot be faulted for refusing to bargain." *NLRB v. Kelly Bros. Nurseries, Inc.,* 341 F.2d 433, 440 (2d Cir.1965).

Because the Authority's construction of the "vitally affects" test is inconsistent with the FSLMRS, the private labor law principles upon which the Authority purports to rely and the Authority's past cases, it was legal error for the Authority to adopt the test as presently formulated. Therefore, the order at issue in this case, which was premised on the Authority's erroneous construction of the "vitally affects" test, must be vacated.

**B.** *The Proposals at Issue*

Having considered, and rejected, the Authority's formulation of the "vitally affects" test, we now turn to an examination of the two union proposals at issue in this case. The Navy argues that Local 2297's proposals are not within the duty to bargain because they seek to establish and regulate the conditions of employment of employees in other bargaining units and supervisory personnel. We agree.

■■■ Union proposals that principally relate to the conditions of employment of bargaining unit personnel are within the traditional scope of mandatory bargaining. As the Supreme Court made clear in *Ford Motor Co.,* 441 U.S. at 501, 99 S.Ct. at 1851, the "vitally affects" test has no application unless the interests of non-bargaining unit personnel are "directly implicated" by a union proposal—that is, unless the proposal purports to regulate the terms and conditions of employment of non-unit employees. Thus, absent a contrary government-wide regulation,[7] a proposal by Local 2297 regarding the area of consideration for job openings *within its bargaining unit* would be bargainable. *See American Fed'n of Gov't Employees,* 4 F.L.R.A. 450, 450–53 (1980) (proposal regarding promotion procedure within bargaining unit subject to mandatory bargaining). As the Navy conceded at oral argument, so too would be a proposal that *all* parking at Cherry Point be reserved for employees in the Local 2297 unit.[8]

Local 2297's proposals in this case go much further, however; they purport to regulate the conditions of employment, not only of bargaining unit employees, but of

---

**7.** Under the FSLMRS, an agency and a union may not bargain over proposals that are inconsistent with government-wide regulations. *See* 5 U.S.C. § 7117(a)(1) (1988).

**8.** Such a proposal arguably would be unreasonable, for, if accepted, it would leave no parking space for persons outside of the unit. But "reasonableness" does not determine whether a subject is bargainable. *See* note 6 *supra.* The employer's recourse in response to such a proposal is to reject it or to counter with a more reasonable proposal.

employees in other bargaining units and supervisory personnel as well. The union's first proposal, if adopted, would permit Local 2297 employees to compete for jobs in other bargaining units, without regard to any contractual restrictions imposed in contracts between the Navy and the unions representing employees in those other units. Local 2297's second proposal would set parking priorities for all persons at Cherry Point, including employees in other bargaining units and supervisory personnel.

Because Local 2297's proposals directly implicate the interests of non-bargaining unit employees by purporting to regulate the conditions of their employment, the proposals fall outside the scope of mandatory bargaining *unless* the "vitally affects" test is met. *See Ford Motor Co.*, 441 U.S. at 501, 99 S.Ct. at 1851; *United Technologies Corp.*, 274 N.L.R.B. 1069, 1070 (1985), *enforced sub nom. NLRB v. Pratt & Whitney Air Craft Div.*, 789 F.2d 121 (2d Cir. 1986). To satisfy the test, the union must show that the "third party matter" about which it seeks to negotiate *vitally affects* the conditions of employment of bargaining unit members. *See Pittsburgh Plate Glass*, 404 U.S. at 179, 92 S.Ct. at 398; *Sperry Sys. Management Div.*, 492 F.2d at 69–70.

There are four possible "third party" groups about whose conditions of employment a union might seek to negotiate. These are: employees in other bargaining units; supervisory personnel; non-supervisory employees who are not in any bargaining unit; and non-employees.

■ We are not aware of any case—in either the public or private sectors—in which an employer has been required to bargain with a union over the conditions of employment of *employees in another bargaining unit*, nor has the Authority cited to such a case. *See AFGE III*, 905 F.2d at 436–37 (Silberman, J., concurring). There is a good reason why no such case appears to exist—for a court to so hold would violate the fundamental principle that a union is the exclusive representative of employees in the certified or recognized unit, and

those employees *only*. *See Sperry Sys. Management Div.*, 492 F.2d at 67 n. 4 (under NLRA, "[d]emands by a union to represent employees outside the certified union are unfair labor practices"); *National Council of Field Labor Locals*, 3 F.L.R.A. 290, 292 (1980) (under FSLMRS, "[a]n exclusive representative's [bargaining] obligation and correlative rights ... extend only to employees in the unit"). It has never been thought that the policies underlying the "vitally affects" test are strong enough to overcome the far more fundamental principles involving the sanctity of certification/recognition and exclusive representation.

We are likewise aware of no case in which a union has been permitted to bargain over the conditions of employment of excluded supervisory personnel. The absence of any such case is easily explained. Under the FSLMRS (and the NLRA), supervisors are members of management and are legally disabled from belonging to any bargaining unit, *see* 5 U.S.C. § 7112(b)(1); as such, the same policies that prevent a union from purporting to regulate the conditions of employment of persons in other units apply with equal force to supervisory personnel. Indeed, the Authority itself has recognized as much. *See National Council of Field Labor Locals*, 3 F.L.R.A. at 292 (holding non-negotiable proposal specifying procedure for filling management and supervisory positions).

■ With regard to non-employees and employees who are not part of any bargaining unit, however, the calculus of negotiability is different. It is clear, of course, that a union may bargain with respect to non-employees if a non-employee matter vitally affects bargaining unit interests— that was the situation in *Pittsburgh Plate Glass*. *See* 404 U.S. at 178–79, 92 S.Ct. at 397. It also may be that, under some circumstances, a union can bargain with respect to employees who are not members of any bargaining unit. *See Sperry Sys. Management Div.*, 492 F.2d at 68–70 (applying "vitally affects" test where union sought to regulate terms of employment of non-unit employees in separate plant);

*United Technologies Corp.,* 274 N.L.R.B. at 1070 (applying "vitally affects" test where union sought negotiation over hiring of temporary summer employees).

■ In this case, the Local 2297 proposals seek to regulate the conditions of employment of members of other bargaining units and supervisory personnel. Such bargaining proposals are impermissible under the FSLMRS; accordingly, the Authority's bargaining order must be vacated. The only possibly unresolved issue is whether there are non-unit, non-supervisory employees at Cherry Point whose conditions of employment are directly implicated by the Local 2297 proposals. If there are such persons, the Authority can address on remand whether the "vitally affects" test is satisfied with respect to those persons on the facts of this case.

In sum, we hold that the Authority's construction of the "vitally affects" test is fatally flawed and that the two proposals at issue in this case are non-negotiable to the extent that they purport to regulate the conditions of employment of supervisory personnel and employees in other bargaining units. This result is required by the terms and policies of the FSLMRS; it is also consistent with the view of the scope of mandatory bargaining under the Statute taken by the Authority prior to the *AFGE* litigation. *See, e.g., Service Employees' Int'l Union,* 9 F.L.R.A. 687; *International Fed. of Professional & Technical Eng'rs,* 8 F.L.R.A. 212 (1982).

■ One final point deserves mention. We reject the view, implicit in the Navy's argument in this case, that when a mandatory subject of bargaining (such as parking for bargaining unit employees) relates to a matter of concern to two or more different bargaining units, it is somehow transformed into a management prerogative. This view suffers from a flaw similar to that present in the Authority's construction of the "vitally affects" test—it excludes from bargaining certain clearly mandatory subjects. Under the Navy's view, a subject that concededly would be bargainable if

only one bargaining unit were involved is rendered non-negotiable if two or more unions are on the affected premises; this would be an absurd result. It is true that it is sometimes inconvenient, even unseemly, to have two or more unions bargaining over all or a share of a finite benefit (such as parking spaces); but this is a problem inherent in the nature of collective bargaining. As the Navy's counsel acknowledged at oral argument, multi-unit (or "coordinated") bargaining may well be the appropriate solution on those rare occasions, such as this case, when more than one bargaining unit legitimately can claim bargaining rights over a particular subject. In the absence of such coordinated bargaining, however, each union may lay claim to a right to negotiate over matters within the compass of mandatory subjects of bargaining for employees within its designated bargaining unit.

### III. CONCLUSION

For the reasons stated above, we vacate the Authority's decision and order in this case. We remand to the Authority for further proceedings consistent with this opinion.

*So ordered.*

### APPENDIX *

*Proposal 1*

The employer agrees to use [to] the maximum possible extent the skills of employees in the Unit. *The area of consideration for promotion announcements shall be the Naval Air Rework Facility (now the Naval Aviation Depot), Marine Corps Air Station, and U.S. Naval Hospital, Cherry Point, N.C., unless this area will not supply sufficient candidates for the vacancy.* The Employer will consult with the Union prior to extending the area of consideration. Consideration may also be made of voluntary applications of current agency employees outside the area of consideration. Every reasonable effort will be made by the Employer to obtain identical information on non-unit candidates as is ob-

---

\* Only the italicized language is in dispute.

tained for Unit candidates. Non-unit candidates shall be evaluated as nearly as possible by the same criteria used to evaluate unit candidates.

*Proposal 2*

*Section 1:* A reserved parking space will be provided for the Union President, the Vice–President, Secretary & Treasurer, and five (5) Chief Stewards. Such parking spaces will be within reasonable walking distance of assigned working areas. In the event that an employee holds two of the above Union Offices, that official will only be assigned one reserved parking space.

*Section 2: The Employer agrees that all other spaces outside the fence shall be open parking for all employees and the Employer on a first come first serve basis without regards to whether or not they are in the unit. Intent: To give unit employees equal access to all open parking areas.*

*b. Exceptions are as follows:*

*(1) Those spaces provided for in Section 1 above.*

*(2) Those officials of exclusively recognized Unions which are specifically provided for by a negotiated agreement.*

*(3) There shall be sufficient spaces set aside for those handicapped employees who have special problems relating to their ability to walk to and from their work site. In this regard, prior to considering a request for special parking, the handicapped employee must obtain a statement from the Industrial Medical Officer certifying that the employee's handicap is so severe, and so limits his ability to ambulate and [sic] that special consideration is warranted.*

*(4) Van Pool reserved spaces.*

*(5) A number of spaces equal to the number of reserved spaces for the union as set forth in Section 1 and Section 2(b)(2) may be reserved outside the fence for the exclusive use of the Employer as Executive spaces.*

*(6) Spaces for privately owned vehicles which are regularly used for Government business at least twelve*

*(12) days per month and which qualify for reimbursement for mileage and travel expenses under Government travel regulations.*

*c. The currently assigned Union Official spaces will not be relocated without mutual agreement of both parties.*

*Section 3: If additional parking lots are opened in the future, which are to be other than open parking, the Employer agrees to notify the Union and give[ ] them the opportunity to meet and confer over any reserved spaces.*

*Section 4:* Upon request the Union shall have access to a current display of all individuals assigned the above cited reserved parking spaces.

NOTE: It is acknowledged and understood that the above provisions regarding parking may have to be changed to comply with requirements and restrictions mandated by higher authority. Any changes will be in compliance with and administered in accordance with such higher authority directives.

*Section 5: Changes to the provisions of this Article can be made by the mutual agreement of the Employer and the Union.*