U.S. DEPARTMENT OF the TREA-
SURY, INTERNAL REVENUE
SERVICE, Petitioner,

v.

FEDERAL LABOR RELATIONS
AUTHORITY, Respondent,

National Treasury Employees
Union, Intervenor.

U.S. DEPARTMENT OF JUSTICE,
JUSTICE MANAGEMENT
DIVISION, Petitioner,

v.

FEDERAL LABOR RELATIONS
AUTHORITY, Respondent.

U.S. DEPARTMENT OF the
TREASURY, BUREAU OF
PUBLIC DEBT, Petitioner,

v.

FEDERAL LABOR RELATIONS
AUTHORITY, Respondent,

National Treasury Employees
Union, Intervenor.

Nos. 91–1573, 91–1633.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 19, 1993.

Decided June 29, 1993.

Thomas M. Bondy, Atty., Dept. of Justice, with whom Stuart E. Schiffer, Acting Asst. Atty. Gen., and William Kanter, Atty., Dept. of Justice, Washington, DC, were on the brief, for petitioners in 91–1573, 91–1574 and 91–1633.

James F. Blandford, Atty., Federal Labor Relations Authority, with whom David M. Smith, Solicitor, and Arthur A. Horowitz, Associate Solicitor, Federal Labor Relations Authority, Washington, DC, were on the brief, for respondent. William E. Persina and William R. Tobey, Federal Labor Relations Authority, Washington, DC, entered an appearance for respondent.

Elaine Kaplan, Deputy General Counsel, National Treasury Employees Union, with whom Gregory O'Duden, General Counsel, National Treasury Employees Union, Washington, DC, was on the brief, for intervenor.

Before: EDWARDS, RUTH BADER GINSBURG, and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Petitioners, bureaus within the Department of the Treasury and the Department of Justice, challenge decisions of the Federal Labor Relations Authority that held certain union collective bargaining proposals subject to mandatory negotiation under Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7101–7135. (1988). The FLRA ordered the agencies to bargain over the proposals. We deny enforcement of the FLRA's orders.

## I.

Under Title VII of the Civil Service Reform Act, also known as the Federal Service Labor–Management Relations statute, 5 U.S.C. §§ 7101–7135 (1988) (the Act), management officials of government agencies must bargain in good faith with representatives of agency employees concerning conditions of employment. See id. §§ 7114(a)(4), 7103(a)(12). The duty to bargain, unlike the parallel duty in the National Labor Relations Act, see 29 U.S.C. § 158(a)(5), (d) (1988), includes an obligation to proceed to binding arbitration concerning any proposal on which agreement cannot be reached. See 5 U.S.C. § 7119. A proposal subject to the duty to bargain in the federal sector is thus potentially a candidate to be incorporated into the collective bargaining agreement by decision of an arbitrator.

The duty to bargain is subject to two exceptions that are germane to this case. First, the management rights subsection of the statute provides that "nothing in this chapter shall affect the authority of any management official of any agency" to perform specified functions. Id. § 7106(a). Included in the list of rights reserved to management is the power "in accordance with applicable laws ... to make determinations with respect to contracting out." Id. § 7106(a)(2)(B). The second exception limits the duty to bargain to ensure that it will not extend to any matters over which bargaining would be "inconsistent with any Federal law or any Government-wide rule or regulation." Id. § 7117(a)(1).

The National Treasury Employees Union (NTEU), the bargaining representative of employees at the IRS, put forward a bargaining proposal that essentially would have required the IRS to comply with Office of Management and Budget Circular A–76 (the OMB Circular) in making all contracting-out decisions. The OMB Circular sets forth a general policy that "the Government shall not start or carry on any activity to provide a commercial product or service if the product or service can be procured more economically from a commercial source." Agencies are to follow a detailed cost comparison procedure in determining whether a particular function should be contracted out, and each agency must establish an internal administrative appeal procedure to hear challenges to contracting-out decisions from employees or outside contractors. The Circular states that, except for the agency's own internal appeal system, "[t]his Circular and its Supplement shall not ... establish and shall not be construed to create any substantive or procedural basis for anyone to challenge any agency action or inaction on the basis that such action or inaction was not in accordance with this Circular." A Supplement to the Circular adds that a decision in the internal review process should not be subject to appeal outside the agency. NTEU's proposal, nevertheless, contemplates that the collective bargaining grievance procedure, including binding arbitration, would constitute the appeal mechanism called for by the Circular.

After the IRS declared the proposal non-negotiable under section 7106(a)(2)(B), the union sought a negotiability determination from the Federal Labor Relations Authority (FLRA or Authority), see 5 U.S.C. §§ 7117(c)(1), 7105(a)(2)(E), and the FLRA concluded that the proposal did come within the IRS' duty to bargain. The Authority determined that the proposal was negotiable, notwithstanding the management rights provision, because another section of the Act, section 7121(a)(1), guaranteed employees the right to grieve and because the Act defined "grievance" to include "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." 5 U.S.C. § 7103(a)(9)(C)(ii). Since the OMB Circular was clearly a regulation, the union had a legitimate right to bargain over grievance procedures to enforce or implement that regulation. The IRS appealed that construction of the statute to this court, but we thought ourselves bound by our previous acceptance of the Authority's interpretation in *EEOC v. FLRA*, 744 F.2d 842 (D.C.Cir.1984), *cert. dismissed*, 476 U.S. 19 (1986), a case in which we upheld the FLRA's determination that a virtually identical proposal concerning the same OMB Circular was negotiable.[1] *See Department of the Treasury, Internal Revenue Serv. v. FLRA*, 862 F.2d 880, 881 (D.C.Cir.1988).

The Supreme Court reversed. *See Department of the Treasury, IRS v. FLRA*, 494 U.S. 922, 110 S.Ct. 1623, 108 L.Ed.2d 914 (1990) (*IRS v. FLRA*). The Court flatly rejected the Authority's effort to find support in a right to grieve under sections 7121 and 7103(a)(9)(C)(ii). The management rights clause unequivocally stated that "nothing in this chapter shall affect the authority of any management official" to make decisions concerning contracting out in accordance with applicable laws. *See id.* at 928. Employees, therefore, could challenge management's contracting-out authority only by seeking to enforce applicable laws.[2] In short, the Court concluded that "there *are* no 'external limita-

---

1. In *EEOC v. FLRA*, we faced a similar bargaining proposal concerning the OMB Circular and agreed with the FLRA that sections 7121 and 7103(a) gave employees a right to grieve over alleged violations of the Circular. We accepted the FLRA's contention that the right to grieve was not limited by the management rights section and that the right to grieve could not be restricted by the Circular itself. In *IRS v. FLRA*, the Supreme Court rejected the core of our statutory construction in *EEOC*.

2. The Court also rejected the FLRA's contention that the term "applicable laws" in section 7106(a)(2) should be read to be coextensive with the phrase "any law, rule, or regulation" in the definition of a grievance in section 7103(a)(9)(C)(ii). Under that reading, of course, employees would have had the same right to grieve concerning decisions in the areas reserved to management authority under section 7106(a) as they would have in any other area. The Court decided that such a reading was contrary to the plain language of the statute. *See IRS v. FLRA*, 494 U.S. at 932, 110 S.Ct. at 1629.

tions' on management rights, insofar as union powers under § 7106(a) are concerned, other than the limitations imposed by 'applicable laws.'" *Id.* at 931.

The Court remanded for the Authority to determine whether the OMB Circular could be construed to be just such an "applicable law," an interpretation the Court thought "a permissible (though not an inevitable) construction of the statute," *id.* at 932, but a construction that had not yet been passed upon by the Authority, the tribunal whose interpretation would be entitled to deference, or by this court. In dissent, Justice Stevens concluded that, regardless of whether or not the Circular was an applicable law, the proposal was not bargainable because the Circular would qualify for another exception under the Act: section 7117(a)'s exemption from the duty to bargain for proposals inconsistent with government-wide rules or regulations. *See id.* at 938. The majority declined to consider that issue since it had not been raised.

On remand the Authority rejected the government's argument that the OMB Circular was merely an internal management directive and concluded that, because it had the force and effect of law, the Circular came within the statutory phrase "applicable law." *See NTEU and Dep't of the Treasury, IRS,* 42 F.L.R.A. 377, 389–99 (1991). The union's proposal was thus negotiable, and the FLRA ordered the agency to bargain. Two other cases involving similar decisions were consolidated on this appeal. *AFSCME Local 3097 and Department of Justice,* 42 F.L.R.A. 587 (1991), involved a virtually identical bargaining proposal, and the FLRA again ordered the agency to bargain. In *NTEU and Department of the Treasury, Bureau of Public Debt,* 42 F.L.R.A. 1333 (1991) (*Bureau of Public Debt*), the FLRA went a step further and concluded that a bargaining proposal that would require compliance not only with the OMB Circular, but also with "other applicable laws and regulations concerning contracting out," also was negotiable under the statute. The Authority did recognize that the proposal required adherence to some unspecified "regulations" that might not be "applicable laws" and thus that it infringed on

the powers reserved to the agency under section 7106(a). *See id.* at 1339. According to the FLRA, however, the proposal was negotiable under an exception to the management rights clause that preserved a duty to bargain concerning "appropriate arrangements" for employees adversely affected by agency action taken under the powers reserved by section 7106(a). *See* 5 U.S.C. § 7106(b)(3) ("Nothing in this section shall preclude any agency and any labor organization from negotiating ... appropriate arrangements for employees adversely affected by the exercise of any authority under this section...").

## II.

The government challenges the Authority's determination that the OMB Circular is an applicable law by reiterating before us its contention that—as a matter of law—the Circular is not a "law" but merely an internal executive branch management directive. The Fourth Circuit has squarely agreed with the government in *Department of Health & Human Services v. FLRA,* 844 F.2d 1087 (4th Cir.1988) (en banc). The Authority responds that the Fourth Circuit did not afford proper deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), to the FLRA's interpretation of the statutory phrase "applicable law"—deference that the Supreme Court indicated should be given to the FLRA's interpretations of the statute in this very case. *See IRS v. FLRA,* 494 U.S. at 928, 110 S.Ct. at 1627.

Even if we assume the Circular has the status of law, however, the government points out that the Authority has ignored the terms of the Circular itself. The Circular states that it cannot be construed to create enforceable rights in non-government parties and the Supplement provides that the Circular's administrative review provision "does not authorize an appeal outside the agency or judicial review" and that "the procedure and the decision upon appeal may not be subject to negotiation, arbitration, or agreement." The bargaining proposals at issue here, as we have noted, not only would subject the ap-

peals procedure to negotiation, but also, if adopted, would convert appeals into grievances, which could lead to binding arbitration. The government thus insists that the FLRA's "interpretation" of the Circular should be rejected. Whatever deference we must extend to the Authority's characterization of the Circular as an "applicable law" under the statute does not extend to an interpretation of the Circular itself at odds with the document's plain meaning and patently contrary to OMB's intent. *Cf. Office of Personnel Management v. FLRA,* 864 F.2d 165, 171 (D.C.Cir.1988). We generally do not grant any deference to the FLRA's interpretation of regulations promulgated by other agencies. *See Department of the Air Force v. FLRA,* 952 F.2d 446, 450 (D.C.Cir.1991).

▆▆▆ The Authority attempts to avoid the government's logic by suggesting that the restrictions on the appeals mechanism outlined in the OMB Circular do not preclude the Authority from determining that the substantive legal obligations contained in the Circular constitute an applicable law in themselves—a law that employees can, under the statute, enforce against management without regard to the Circular's limitations on appeals.[3] Implicit in the Authority's argument—although by no means spelled out—is the notion that only the substantive obligations in the OMB Circular constitute the "applicable law." The Authority claims support from the Sixth Circuit opinion in *Diebold v. United States,* 947 F.2d 787 (6th Cir.1991), in which the court held that the Circular's restrictions on the appeals mechanism did not bar an action brought under the Administrative Procedure Act (APA) by civil-

ian Army employees affected by a decision to contract-out their work. *See id.* at 806–07.

We think it unnecessary to decide whether the Authority's designation of the Circular—or, more accurately, part of the Circular—as an applicable law is a permissible construction of the Act. Instead, we favor the government's alternative argument, drawn from Justice Stevens' dissent in *IRS v. FLRA,* that, assuming *arguendo* the Circular is an applicable law, it is also a government-wide rule or regulation under section 7117(a) of the Act. *See IRS v. FLRA,* 494 U.S. at 938, 110 S.Ct. at 1632 (Stevens, J., dissenting). That section exempts from the duty to bargain any proposal inconsistent with a government-wide rule or regulation:

> [T]he duty to bargain in good faith shall, to the extent not inconsistent with any Federal law or any Government-wide rule or regulation, extend to matters which are the subject of any rule or regulation only if the rule or regulation is not a Government-wide rule or regulation.

5 U.S.C. § 7117(a)(1). The exemption essentially permits the government to pull a subject out of the bargaining process by issuing a government-wide rule that creates a regime inconsistent with bargaining.[4] It is obvious that collective bargaining over the method for resolving disputes concerning application of the Circular and arbitration of claimed "violations" of the Circular would both be inconsistent with the terms of the Circular. The regulation sets out an exclusive method of resolving any claims regarding its implementation and forbids negotiation or arbitration over the process or decisions issuing from the process.[5]

---

**3.** The Authority's position is reminiscent of the Supreme Court's rationale in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (holding that the process due for the protection of a substantive right must be determined under the Constitution independently of the procedures specified by the provision granting the right).

**4.** Section 7117(a) might also be read to mean that an agency has no duty to bargain over a proposal that simply addresses a topic covered by a government-wide regulation. Justice Stevens' dissent in *IRS v. FLRA* suggests that a proposal that even addresses matters that are the topic of a government-wide regulation will not be

subject to the duty to bargain. *See IRS v. FLRA,* 494 U.S. at 938, 110 S.Ct. at 1632 (Stevens, J., dissenting). The parties have not argued this point before us, and because we conclude that the proposal is inconsistent with the Circular in any event, we need not decide whether section 7117(a) is as broad as Justice Stevens' dissent suggests.

**5.** There is no dispute that the Circular qualifies as a government-wide rule or regulation for purposes of section 7117(a). Paragraph 7 of the Circular states that the Circular and Supplement apply to "all executive agencies," thus making it "generally applicable throughout the federal government," *see Overseas Educ. Ass'n v. FLRA,* 827

To be sure, we have recognized some important limitations on the government's ability to diminish the scope of collective bargaining through government-wide regulations. In *Office of Personnel Management v. FLRA*, 864 F.2d 165 (D.C.Cir.1988) (*OPM*), we held that the government could not preclude bargaining over "appropriate arrangements" that would accompany an exercise of the right reserved to management under section 7106(a)(2)(C) to fill positions from "*any* appropriate source." (Section 7106(b)(3) preserves a duty to bargain concerning appropriate arrangements for employees adversely affected by the exercise of a reserved management authority.) The government had sought to extend by regulation its authority so that it would not only have the right to fill positions from any source, but would also be able to reject as non-bargainable union proposals that might be thought appropriate arrangements designed to cushion the impact on employees of management's exercise of that right. We held that the government could not gain the exemption from bargaining in section 7117(a) merely by restating with broader effect a provision in the management rights section. But we explained that the government could obtain the full benefit of the exemption if instead of developing new management powers not granted by the Act, it "directs the exercise of existing management prerogatives in a *specific* way, so that *particular* subjects or appropriate arrangements are identified as inappropriate topics of bargaining." *OPM*, 864 F.2d at 171 (emphasis in original).

The OMB Circular meets this test; it sets forth substantive and procedural limitations, including detailed cost comparison criteria, that restrict agencies' prerogatives to contract out under the management rights section. The Circular does not purport to expand on management rights recognized in the statute; rather, it restricts rights already granted. The FLRA contends, however, that because the Circular is an applicable law—which we assume *arguendo*—the employees have a right to grieve over violations of the law under section 7121(a)(1) (which requires all bargaining agreements to provide a method for resolving grievances) and section 7103(a)(9)(C)(ii) (which defines "grievance" to include "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation"). According to the Authority, the terms of the regulation itself cannot undermine a right to grieve granted by the statute, and to oust employees of that grievance right would transgress the spirit, if not the holding, of *OPM*. This argument is redolent of the contention advanced by the Authority in *EEOC v. FLRA* that the union's right to grieve under section 7103(a)(9) trumped the management rights section. *See EEOC v. FLRA*, 744 F.2d at 851. The Supreme Court rejected the Authority's claim and gave effect to the language of section 7106(a) that stated that "nothing in this chapter shall affect the authority of any management official of any agency" to make contracting out determinations *in accordance with applicable laws*. *See IRS v. FLRA*, 494 U.S. at 928–31, 110 S.Ct. at 1627–29. The Authority points out, however, that if the Circular is an "applicable law," the Court's reasons for rejecting the argument put forth in *EEOC* and pressed in *IRS v. FLRA* do not support rejecting the argument here, because the command in section 7106(a) does not apply—the union, according to the Authority, is only seeking to force management to act in accordance with applicable law.

We think that the Authority's logic is nevertheless faulty. We take the Authority to argue that the statutory right to grieve over a claimed violation of a rule may not be cut off by the rule itself, even if the rule, by its very terms, purports to prohibit grievances. That may be a reasonable interpretation of the statute with respect to an ordinary regulation, but it cannot be so concerning a government-wide regulation that qualifies under section 7117(a). The Act exempts from bargaining any proposal inconsistent with such a regulation. The Authority's construction of

---

F.2d 814, 816–17 (D.C.Cir.1987); *Nat'l Fed'n of Fed. Employees, Local 15 and Dep't of the Army*, 33 F.L.R.A. 436, 439 (1988). And if it is, as we assume, an "applicable law," it must, *a fortiori*, have the binding effect required for a rule or regulation under section 7117(a). Indeed, the FLRA itself has concluded that the Circular is a government-wide rule or regulation. *See National Treasury Employees Union and Department of the Treasury, IRS*, 27 F.L.R.A. 976, 977 (1987).

the statute, giving effect to a right to grieve over the exemption from bargaining, cannot be reconciled with the language of section 7117(a). In interpreting the Federal Service Labor–Management Relations Act, we look to generally accepted principles of labor law developed under the National Labor Relations Act to inform our understanding of the language Congress uses. *See, e.g., Department of the Navy v. FLRA,* 952 F.2d 1434, 1439 (D.C.Cir.1992); *American Fed'n of Gov't Employees, Local 32 v. FLRA,* 853 F.2d 986, 992 (D.C.Cir.1988). The presentation of grievances is generally recognized as an extension of or form of collective bargaining. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960); *see also* H. EDWARDS, R. CLARK & C. CRAVER, LABOR RELATIONS IN THE PUBLIC SECTOR, 803–04 (4th ed. 1991). The exemption from bargaining could be largely negated if employees retain an independent right to grieve violations of a government-wide regulation. In that case even if the government could prescribe a substantive rule on a topic without negotiation, it would have to surrender implementation of the rule to the grievance procedure and even arbitration—which, of course, could lead *de facto* to a vastly different substantive rule. Although that result may be contemplated by the statute if a government-wide regulation does not address implementing mechanisms, or at least does not explicitly exclude the use of grievance and arbitration procedures, when, as here, the regulation does supplant the grievance procedures, to add them back would be to destroy the exemption from bargaining. Section 7117(a) comprehends a more meaningful protection than that, certainly when the government-wide regulation specifically precludes grievances.[6] The Authority's rather circular reasoning, based on the repeated assertion that the terms of the regulation cannot undermine a right to grieve granted by the statute, fails to recognize that the statute itself, in section 7117(a), provides the exemption from the duty to bargain. Just as in *EEOC v. FLRA* the Authority's attempt to give paramount importance to the right to grieve ignored the unequivocal command that "nothing in this chapter" would affect management's rights reserved in section 7106(a), so here the FLRA's construction would effectively read section 7117(a) out of the statute. The exemption, after all, is cast in absolute terms—there is no obligation to bargain over any proposal inconsistent with a government-wide regulation—and the general right to grieve cannot be read to trump that explicit exception.

We hold that if a government-wide regulation under section 7117(a) is itself the only basis for a union grievance—that is, if there is no pre-existing legal right upon which the grievance can be based—and the regulation precludes bargaining over its implementation or prohibits grievances concerning alleged violations, the Authority may not require a government agency to bargain over grievance procedures directed at implementation of the regulation. When the government promulgates such a regulation, it will not be hoisted on its own petard.

■ Our resolution of the case makes it unnecessary to consider separately whether the union's proposal in the *Bureau of Public Debt* case is bargainable as an "appropriate arrangement" designed to cushion the impact on employees adversely affected by management's contracting-out decisions. Unlike the exemption in the management's rights section, the government-wide regulation exception to an agency's obligation to bargain is not conditioned by the need to bargain over "appropriate arrangements." *See* 5 U.S.C. § 7117(a). That is why in *OPM,* mindful of the implications of that exception, we were careful to delineate the circumstances under

---

6. It might be thought that section 7117(a)'s exemption from bargaining always entails an exemption from the right to grieve concerning the government-wide regulation. We need not decide that question, however, because the regulation is this case explicitly prohibits grievances, thus making a proposal to allow grievances "inconsistent" with its terms. Certainly the FLRA

has treated violations of government-wide rules or regulations as violations of a "law, rule, or regulation" that, under section 7103(a)(9)(C)(ii), can be grieved, *see, e.g., AFGE and EEOC,* 10 F.L.R.A. 3, 4 (1982); *AFGE and Dep't of Commerce, Bureau of the Census,* 6 F.L.R.A. 314, 322 (1981).

which the government could utilize section 7117(a). In this case, the union seeks to bargain, as an "appropriate arrangement," over the same kind of proposal that we have determined is inconsistent with the OMB Circular. The Authority, by referring to the proposal alternatively as an "appropriate arrangement," simply attempts to circumvent the government's right to avail itself of the government-wide regulation exception from the duty to bargain.

\*     \*     \*     \*     \*     \*

For the foregoing reasons, the proposals are not negotiable under the statute. We grant the petitions for review and deny enforcement of the Board's orders.

*So ordered.*

