7 F.3d 243
 144 L.R.R.M. (BNA) 2540, 303 U.S.App.D.C. 371
 UNITED STATES DEPARTMENT OF COMMERCE, NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION, NATIONAL WEATHER
SERVICE, SILVER SPRING, MD, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
National Weather Service Employees Organization, Intervenor.
 No. 92-1171.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 9, 1993.
Decided Oct. 22, 1993.
As Amended Nov. 1, 1993.
 
 Petition for Review of an Order of the Federal Labor Relations Authority and Cross-Application for Enforcement.
 Mark W. Pennak, Atty., U.S. Dept. of Justice, Washington, DC, argued the cause for petitioner. With him on the briefs was William Kanter, Atty., U.S. Dept. of Justice.
 David M. Smith, Sol., Federal Labor Relations Authority, Washington, DC, argued the cause for respondent. With him on the briefs were Arthur A. Horowitz, Deputy Sol. and Richard Zorn, Atty., Federal Labor Relations Authority, William Persina and William R. Tobey, Attys., Federal Labor Relations Authority, entered an appearance.
 Richard J. Hirn, Gen. Counsel, Nat. Weather Service Employees Organization, Washington, DC, was on the brief for intervenor Nat. Weather Service Employees Organization.
 Before: SILBERMAN, WILLIAMS, and RANDOLPH, Circuit Judges.
 Opinion for the court filed by Circuit Judge SILBERMAN.
 SILBERMAN, Circuit Judge:
 
 
 1
 The Department of Commerce, National Weather Service, petitions for review of a decision of the Federal Labor Relations Authority requiring the agency to bargain over a proposal advanced by the National Weather Service Employees Organization. The FLRA cross-petitioned for enforcement of its order. The agency argued for the first time before us that the proposal was non-negotiable because it included supervisors. We lack authority to hear an argument not raised before the FLRA and therefore deny the agency's petition for review and grant the FLRA's cross-petition for enforcement of its decision and order.
 
 I.
 
 2
 This case grows out of two negotiability appeals brought by the National Weather Service Employees Organization before the FLRA. The union challenged the agency's refusal to bargain over a collective bargaining agreement provision and a bargaining proposal[1] concerning reductions-in-force (RIF) scheduled to take place at the agency. The union wished to reach an agreed upon definition of the term "competitive area" for purposes of the RIF. The competitive area is a grouping of certain agency employees based on geographical or organizational location who compete for job retentions during a RIF. See American Federation of Government Employees, Local 32 v. FLRA, 853 F.2d 986, 988 (D.C.Cir.1988). Under 5 C.F.R. § 351.402(b), a competitive area "must include all employees within the competitive area so defined" and employees under the regulation includes supervisors. 5 C.F.R. § 351.202. Within a competitive area, agencies establish "competitive levels" for employees that consist of groups of positions that are roughly equivalent "in duties, qualification requirements, pay schedules, and working conditions." 5 C.F.R. § 351.403(a). An individual who loses his job may replace (bump) an individual in a lower competitive level. That individual may, in turn, bump an individual in a still lower competitive level. The union sought to establish six competitive areas along geographical lines mirroring the agency's field structure.
 
 
 3
 Before the Authority, the agency argued that since the union sought to bargain over proposals that would cover all regional employees in the competitive areas, the union impermissibly sought to determine the terms of employment for employees not in its bargaining unit. Specifically, the agency accused the union of trying to bargain over the conditions of employment for employees in a separate bargaining unit actually represented by another union, AFGE Local 2396 (located in the National Weather Service's western region). We held recently in United States Department of the Navy, Naval Aviation Depot, Cherry Point, North Carolina v. FLRA, 952 F.2d 1434, 1442 (D.C.Cir.1992) (Cherry Point ), that a union may not bargain over the terms and conditions of employees in a separate bargaining unit. The union contended, however, that Local 2396 had been disbanded and that it could, therefore, represent employees in that unit. The FLRA could not determine whether Local 2396 had been disbanded, and, if so, whether the employees had accreted to the union's bargaining unit, so the Authority decided to sever the western region from the union's proposals and dismiss the petition insofar as it concerned the competitive area for the western region.
 
 
 4
 At the same time the FLRA resolved the problem posed by Local 2396's inclusion in the union's bargaining proposals, the FLRA introduced, sua sponte, a similar issue the agency had not raised itself.[2] Recognizing that the definition of competitive areas proposed by the union would apply to supervisors, the FLRA considered whether or not the proposals impermissibly sought to cover the employment terms of supervisory personnel.
 
 
 5
 The FLRA recognized that Cherry Point was relevant to the question of whether unions could bargain over the terms of employment for supervisory personnel. Cherry Point had also held that a union may not submit proposals which "purport[ ] to regulate the conditions of employment" of supervisory personnel. 952 F.2d at 1442. The Authority distinguished Cherry Point on grounds that the union did not seek or purport to bargain over the conditions of employment for supervisory personnel. It was the Authority's view that the RIF regulations obliged the union to include supervisors among employees who enjoyed bumping rights.
 
 
 6
 Without making a motion for reconsideration before the FLRA, the agency filed a petition for review in this court, arguing that the FLRA had misapplied Cherry Point. The government contends that the union is not justified in seeking to bargain over a proposal that applies equally to supervisors as well as bargaining unit employees merely because the government's RIF regulations require that supervisors as well as employees have an opportunity to compete in the event of a RIF. The regulations, instead, by so requiring, make clear that the definition of competitive areas is inappropriate for collective bargaining.
 
 II.
 
 7
 Before reaching the merits of the government's argument, we are obliged to determine whether we may hear the petition. Section 7123(c) of the Federal Service Labor-Management Relations Statute states that "[n]o objection that has not been urged before the Authority, or its designee, shall be considered by the court [of appeals], unless the failure or neglect to urge the objection is excused because of extraordinary circumstances." 5 U.S.C. § 7123(c) (1988). The government candidly admits that it had not "explicitly address[ed] application of the proposal to supervisory employees." It urges, however, that it had implicitly raised the supervisory issue because it had objected to the proposals on the grounds that they included "all employees." Moreover, petitioner insists that where--as here--the FLRA raises an issue itself and decides that issue in an order, the requirements of section 7123(c) are met. The government asserts that the agency's failure to raise the supervisory employees issue excused by extraordinary circumstances.
 
 
 8
 We do not think the government's contention that the agency's generalized objection to the proposal's use of the phrase "all employees" fairly brought the supervisory issue to the Authority's attention.[3] After all, the petitioner's argument was focused on the impropriety of the union's proposal covering another bargaining unit. It was for that reason that the agency objected to the inclusion of "all employees" within the proposals.
 
 
 9
 To be sure, section 7123(c) gives us authority to hear arguments not raised before the FLRA if we conclude that the government's failure to do so is justified by extraordinary circumstances. It might well be that even in the absence of a government claim to that effect, we would be authorized to find extraordinary circumstances on our own. As the Supreme Court has noted, section 7123(c) "speaks to courts" and asks that courts determine whether they have the jurisdiction-like authority to hear an argument. EEOC v. FLRA, 476 U.S. 19, 23, 106 S.Ct. 1678, 1680, 90 L.Ed.2d 19 (1986).
 
 
 10
 The government does contend, however, that since the FLRA raised the supervisory issue, sua sponte, section 7123(c)'s requirements are satisfied. Although the Supreme Court has determined that a petitioner is not excused from filing a petition for reconsideration merely because the FLRA raises and decides an issue sua sponte, id., we have held that "when combined with the 'almost sua sponte ' nature of the FLRA's decision ... the patent futility of a rehearing petition constitutes an extraordinary circumstance." See NLRB v. FLRA, 2 F.3d 1190, 1196 (D.C.Cir.1993); see also United States Dep't of Interior Minerals Management Serv. v. FLRA, 969 F.2d 1158, 1161 (D.C.Cir.1992). We thought the FLRA had acted sua sponte in that case because it regarded its own precedent as so strong that it did not even entertain the possibility of a successful counter argument. Under those limited circumstances, the 'almost' sua sponte nature of the FLRA's resolution of the issue simply emphasized the patent futility of the NLRB making a motion for reconsideration. That situation does not present itself here; it is our own recent decision in Cherry Point, not settled FLRA precedent, that the Authority addressed sua sponte.
 
 
 11
 The government did not claim in its brief that it would have been futile to move for reconsideration, although at oral argument government's counsel did make a rather unpersuasive claim to that effect. "[T]he most we could have done in a reconsideration motion was to say, 'Hey, what about Cherry Point. You misconstrued Cherry Point and Cherry Point 's discussion of the words seek or purport.' " Exactly; the Authority's reasons for distinguishing Cherry Point seem to us rather tenuous. We therefore suspect that if the government had provided the FLRA the cogent arguments presented to this court, the FLRA may well have reconsidered its decision.
 
 
 12
 * * * * * *
 
 
 13
 Accordingly, because we lack the authority to hear the agency's objections relating to the supervisory employees, we dismiss the agency's petition, and we grant the FLRA's cross-petition for enforcement.
 
 
 
 [1]
 Both the contractual provision and the bargaining proposal shall hereinafter be collectively referred to as "proposals."
 
 
 [2]
 Cherry Point issued while the case was pending before the FLRA
 
 
 [3]
 The Authority also did not believe the Agency had raised the supervisory issue. "[A]lthough the Agency did not raise the issue, we cannot ignore the fact that the competitive areas that are defined by the provision and proposal also would encompass the management personnel who are assigned to the Agency's regions." [J.A. at 192]