**U.S. MERIT SYSTEMS PROTECTION BOARD, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 88–1268.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 23, 1989.

Decided Sept. 14, 1990.

Michael W. Doheny, Washington, D.C., for petitioner.

Jill A. Griffin, Atty., Federal Labor Relations Authority ("FLRA"), with whom William E. Persina, Acting Sol., FLRA, and Arthur A. Horowitz, Associate Sol., FLRA, Washington, D.C., were on the brief, for respondent. Ruth E. Peters, Attorney, FLRA, Washington, D.C., also entered an appearance for respondent.

Before STARR * and BUCKLEY, Circuit Judges, and ROBINSON, Senior Circuit Judge.

Opinion PER CURIAM.

PER CURIAM:

The Merit Systems Protection Board ("MSPB" or "Board") petitions for review of a decision and order entered by the Federal Labor Relations Authority ("FLRA" or "Authority") requiring the Board to engage in collective bargaining over a proposal advanced by the MSPB Professional Association. The Association's proposal calls for an extension of secondary assignment rights for bargaining unit employees in the event of a reduction in force. We hold that the proposal is inconsistent with applicable government-wide regulations and is therefore nonnegotiable.

---

* Judge Starr (now Solicitor General) heard argument in this case but took no part in its disposition.

## I. BACKGROUND

### A. Legal Framework

Where a union has been recognized as the exclusive representative of employees of a federal agency, the Federal Service Labor–Management Relations Statute, 5 U.S.C. §§ 7101–7135 (1988) ("FSLMRS"), imposes upon both agency management and the union a general obligation to negotiate in good faith over the conditions of employment of the represented employees. 5 U.S.C. §§ 7114, 7117. At the same time, the FSLMRS delimits the scope of a federal agency's duty to bargain; an agency may not negotiate over proposed conditions of employment that are "inconsistent with any Federal law or any Government-wide rule or regulation." *Id.* § 7117(a)(1).

Under the Civil Service Reform Act of 1978, as amended, 5 U.S.C. §§ 1101–8913 (1988), of which the FSLMRS is a part, the Office of Personnel Management ("OPM") is the lead personnel agency for civilian employees in the executive branch, charged by Congress with authority to issue government-wide regulations, to delegate its authority to other agencies, and to oversee federal personnel programs to ensure that OPM regulations are complied with. *See* 5 U.S.C. §§ 1103–1104, 1301–1302; S.Rep. No. 969, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2723, 2727–28. Pursuant to the requirements of the Act, 5 U.S.C. § 3502, OPM has promulgated regulations governing reductions in force. 5 C.F.R. Part 351 (1990). These regulations are binding on all federal agencies with employees in the competitive service, 5 U.S.C. § 1104(b)(1), generally apply to most civilian employees of the federal government, *see* 5 C.F.R. § 351.202, and are recognized by the Authority as government-wide regulations within the meaning of 5 U.S.C. § 7117(a)(1). *See National Treasury Employees Union, NTEU Chapter 202 and Dep't of the Treasury, Bureau of Gov't Fin. Operations,* 22 F.L.R.A. 553, 555 (1986). In addition, OPM publishes in the Federal Personnel Manual ("FPM") detailed operating instructions that implement its government-wide regulations. *See, e.g.,* FPM Supplement 351–1 (Sept. 18, 1989) (reductions in force).

A reduction in force occurs when an agency releases an employee from his competitive level because of administrative exigencies, such as a lack of work, a shortage of funds, or the impact of a personnel ceiling. 5 C.F.R. § 351.201(a)(2). Employees affected by a reduction in force must be allowed to "compete for retention" with other employees in the same "competitive area." *Id.* § 351.402(a). The competitive area may consist of all or part of the agency but "must be defined solely in terms of an agency's organizational unit(s) and geographical location, and it must include all employees within the competitive area so defined." *Id.* § 351.402(b). A "competitive level" comprises all positions in a competitive area that are within the same grade and classification series and that are essentially fungible in terms of their duties and working conditions. *See id.* § 351.403(a). In the event of a reduction in force, the agency must classify each employee within a given competitive level according to the employee's tenure, veteran preference, length of service, and job performance. *Id.* § 351.501. The employees' retention standing determines the order of their release; those with the lowest retention standing are released first. *Id.* § 351.601(a).

Separate competitive levels must be established for "competitive" service employees and for employees who are in the "excepted" service. *Id.* § 351.403(b)(1). Competitive service employees are those who gain employment status through a competitive civil service examination (generally including executive branch employees) and any federal employees who are otherwise subject to the civil service laws. *See* 5 C.F.R. Parts 1–3. The excepted service includes all those positions in the Executive Branch that are specifically excepted from the requirements of the civil service laws by statute or by OPM. *Id.* § 1.4; *see id.* Part 6.

When a competitive service employee who has at least a "minimally successful" performance rating is released from a competitive level during a reduction in force, he

enters a second round of competition for retention within the competitive area as a whole and thus acquires secondary "assignment rights," including "bump and retreat" privileges. *Id.* § 351.701. The right to "bump" is the right of a released employee in a career tenure group to displace an employee in a lower tenure group or in a lower subgroup within the same tenure group. *Id.* § 351.701(b). The right to "retreat" is the right to displace an employee with lower retention standing in the same tenure group and subgroup who occupies an "essentially identical" position. *Id.* § 351.701(c).

While these OPM regulations require agencies to provide bump and retreat rights to all competitive service employees, OPM has left to each agency's discretion the decision whether to extend such rights to excepted service employees, *id.* § 351.705(a)(3), provided that an agency may only extend secondary assignment rights to excepted service employees if, among other things, such rights are "uniformly and consistently applied in any one reduction in force." *Id.* § 351.705(b)(2). Furthermore, OPM regulations generally provide that each agency shall follow Part 351 in the event of a reduction in force, *id.* § 351.201(a)(2), and that each agency "is responsible for assuring that the provisions in this part are uniformly and consistently applied in any one reduction in force." *Id.* § 351.201(c).

## B. Factual Background

The Association represents one bargaining unit of about thirty GS–905 excepted service attorney-advisors who work at the Board's Washington, D.C., headquarters, which has been designated a single competitive area for purposes of OPM's regulations. In addition to the bargaining unit employees, there are nineteen GM–905 excepted service attorney-advisors who also work within this competitive area. These GM–905 employees are not represented by the Association because they are supervisors, managers, or confidential employees, as defined in 5 U.S.C. § 7103(a)(10), (11), and (13), and are therefore precluded under the FSLMRS from membership in a bar-

gaining unit. *Id.* § 7112(b)(1), (2). The Board, in its discretion, has chosen not to extend secondary assignment rights to any of its excepted service employees, including the attorney-advisors employed at its Washington headquarters.

In the course of negotiating a new collective bargaining agreement with the Board, the Association advanced the following proposal:

A unit employee affected by a RIF [reduction-in-force] will be afforded second-round assignment rights to unit positions including bumping and retreat rights as provided at 5 C.F.R. Part 351, subpart G.

The Board determined that the proposal was outside its duty to bargain for the following reasons: First, if secondary assignment rights were extended to the thirty members of the bargaining unit but not to the nineteen nonmember employees, as proposed by the Association, the Board would run afoul of the OPM regulation requiring that any discretionary extension of such rights to excepted service employees be uniformly and consistently applied. Second, the proposal would require the agency to define the competitive area in terms of bargaining unit status in violation of the OPM regulation requiring that competitive areas be defined solely in terms of organizational units and geographical location. Finally, if adoption of the proposal would require the agency to extend bump and retreat rights to all excepted service employees at its Washington headquarters in order to remain consistent with OPM regulations, the proposal was nonnegotiable because it would directly establish conditions of employment for employees outside the bargaining unit. Agency Statement of Position on Negotiability Issue, *Merit Sys. Protection Bd. Prof. Ass'n and U.S. Merit Sys. Protection Bd.,* No. 0–NG–1370, at 4–16 (F.L.R.A. Mar. 30, 1987).

The Association appealed the Board's determination to the Authority pursuant to 5 U.S.C. § 7117(c). The Authority reversed, holding that the proposal does not conflict with any government-wide regulation, does not directly determine conditions of employment for nonunit employees, and, al-

though directly interfering with agency management's right to assign employees, constitutes an "appropriate arrangement" within the meaning of section 7106(b)(3). *Merit Sys. Protection Bd. Prof. Ass'n and Merit Sys. Protection Bd.*, 31 F.L.R.A. (No. 26) 258 (1988). The Board petitions for review of this decision pursuant to 5 U.S.C. § 7123(a), and the Authority cross-petitions for enforcement of its order to bargain.

## II. DISCUSSION

The Board argues that under OPM's regulations an extension of secondary assignment rights must include all excepted service employees in the competitive area and may not be limited, as the Association has proposed, to employees who are members of the bargaining unit. The Authority, on the other hand, argues that OPM's regulations provide sufficient flexibility to allow an agency in its discretion to extend bump and retreat rights to a select group of excepted service employees and that the Association's proposal is therefore within the Board's duty to bargain. The Board also contends that the proposal is nonnegotiable because it would directly determine the conditions of employment of nonunit employees. Because we agree with the Board that the Association's proposal is inconsistent with the clear requirements of applicable government-wide OPM regulations, we need not reach the latter issue.

■ We review the Authority's decision based on the record before the Authority and set aside that decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1988); *American Fed. of Gov't Employees, AFL–CIO, Local 2441 v. FLRA*, 864 F.2d 178, 184 (D.C.Cir.1988). The issue before us involves the Authority's interpretation of OPM regulations. Because Congress specifically delegated to OPM the authority to "prescribe regulations for the release of competing employees in a reduction in force," 5 U.S.C. § 3502(a), we do not defer to the Authority's construction of those regulations. *National Treasury Employees Union v. FLRA*, 848 F.2d 1273, 1275 (D.C.Cir.1988). The Authority's interpretation of OPM regulations is therefore subject to de novo review. *Id.*

■ Under the OPM regulations, an agency may extend bump and retreat rights to excepted service employees only if such rights are applied in a uniform and consistent manner. 5 C.F.R. § 351.705(a)(3), (b)(2). This requirement of uniformity and consistency of treatment for employees affected by a reduction in force runs throughout OPM's regulations. *See id.* § 351.201(c) ("Each agency is responsible for assuring that the provisions in this part are uniformly and consistently applied in any one reduction in force."). The implementing instructions published by OPM in the Federal Personnel Manual also set forth this requirement: "Discretionary assignment practices must be applied uniformly and consistently in any one reduction in force, and employees must be informed of them in advance." FPM Supplement 351–1 § S5–10(b).

The regulations define the "competitive area" to be the universe within which displaced employees compete for secondary assignments under reduction-in-force procedures. *See* 5 C.F.R. §§ 351.402(a), .701(a); FPM Supplement 351–1 §§ S3–2(a), S5–3(a)(2). The competitive area must be determined solely on the bases of the agency's organizational units and geographical locations and "must include *all* employees within the competitive area so defined." 5 C.F.R. § 351.402(b) (emphasis added); *see* FPM Supplement 351–1 § S3–2(b). As prescribed by Congress when it authorized OPM to regulate reductions in force under the Act, an agency may consider only four factors in determining the order of retention of employees during a reduction in force—tenure status, veteran preferences, length of service, and job performance. 5 U.S.C. § 3502(a); 5 C.F.R. § 351.501. These same retention factors indirectly govern the exercise of secondary bump and retreat privileges within a competitive area for employees released from their competitive levels in the first round of a reduction in force. *See* 5 C.F.R. § 351.701.

We, like the Board, interpret the regulations to mean what they so clearly say: An agency must apply secondary assignment rights uniformly and consistently among all excepted service employees in the same competitive area. We can find no basis for the Authority's construction, which would permit the extension of secondary assignment rights exclusively to bargaining unit members. Nothing in the Act or OPM's implementing regulations supports the consideration of bargaining unit membership; rather, the Act and the regulations omit labor representation considerations from those few factors that affect retention privileges. Indeed, as the Authority concedes, it has previously decided in other cases that proposals that seek to limit a competitive area solely to bargaining unit positions are nonnegotiable. *E.g., National Treasury Employees Union and Dep't of Health and Human Services, Region X*, 25 F.L.R.A. 1041, 1043–44 (1987) (Proposal 2). The same principle is involved here.

Nevertheless, the Authority claims to find support for its construction of the OPM regulations in language in OPM's Federal Personnel Manual stating that secondary assignment rights for excepted service employees "may be as extensive or more restrictive than those for competitive service employees." FPM Supplement 351–1 § S5–10(a)(3). We are unimpressed. We do not read this language as undercutting the plain meaning of OPM's regulations requiring uniformity and consistency within each competitive area. The secondary assignment rights accorded excepted service employees may be more restricted than those accorded competitive service employees (*e.g.*, they may include bumping privileges without including retreating privileges), but whatever secondary rights are provided to excepted service employees must be provided uniformly and consistently to all excepted service employees in the same competitive area.

Nor are we persuaded by *Nuclear Regulatory Comm'n v. FLRA*, 895 F.2d 152 (4th Cir.1990), in which the Fourth Circuit held that a similar union proposal was within the agency's duty to bargain. *Id.* at 156–59. The court there relied extensively on the Authority's decision in the present case

and based its opinion primarily on the question of whether the proposal would have a direct adverse impact on the conditions of employment of nonbargaining unit employees. *See id.* at 158–59. Moreover, the court failed to provide any persuasive justification for its interpretation of OPM's "uniform and consistent" requirement. *See id.* at 158.

We therefore conclude, on the basis of the plain meaning of both the Act and the regulations, that an agency must extend secondary assignment rights either to all excepted service employees within a single competitive area or not at all. The Authority's approach cannot be reconciled with this requirement; any attempt to do so would require a redefinition of the competitive area to include only bargaining unit employees, which is clearly prohibited under OPM regulations. Because the Board has determined not to extend bump and retreat rights to other excepted service employees, the Association's proposal calling for the extension of secondary rights exclusively to its members is outside the Board's duty to bargain under the FSLMRS. 5 U.S.C. § 7117(a)(1).

### III. Conclusion

The government-wide regulations promulgated by OPM require that any discretionary extension of secondary assignment rights to excepted service employees be uniform and consistent for all excepted service employees in a given competitive area. We conclude that the Board properly determined that the Association's proposal is inconsistent with these applicable government-wide regulations and is therefore nonnegotiable under section 7117(a)(1). We set aside the Authority's decision on negotiability as contrary to law. Accordingly, we grant the petition for review and remand to the Authority to strike its previous order to bargain and enter an order in accordance with this opinion. The cross-petition for enforcement is denied.

*So ordered.*