AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 32, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent,

Office of Personnel Management, Intervenor.

No. 95–1593.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 21, 1997.

Decided April 18, 1997.

Rehearing Denied June 5, 1997.

Kevin M. Grile, argued the cause for petitioner, with whom Mark D. Roth and Charles A. Hobbie, Washington, DC, were on the briefs.

David M. Smith, Solicitor, Federal Labor Relations Authority, argued the cause for respondent, with whom William R. Tobey, Deputy Solicitor, and James F. Blandford, Attorney, Washington, DC, were on the brief.

Mark W. Pennak, Attorney, United States Department of Justice, argued the cause for intervenor, with whom Frank W. Hunger, Assistant Attorney General, and William Kanter, Deputy Director, Washington, DC, were on the brief.

H. Stephan Gordon, Silver Spring, MD, was on the brief for amicus curiae National Federation of Federal Employees.

Before: SILBERMAN, SENTELLE and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

This is a petition for review of a Federal Labor Relations Authority ("FLRA" or "Authority") decision that a bargaining proposal from Local 32 of the American Federation of Government Employees ("Union") is outside the Office of Personnel Management's ("OPM" or "Agency") duty to negotiate. The Authority found the proposal non-negotiable because it directly implicates and purports to regulate the working conditions of supervisors. Agreeing with the Authority, we deny the petition.

## BACKGROUND

■ Where a union is the exclusive representative of employees of a federal agency, the Federal Service Labor–Management Relations Statute ("Statute" or "FSLMRS") imposes upon the agency a general obligation to negotiate in good faith over the conditions of employment of the represented employees. 5 U.S.C. §§ 7114, 7117; *U.S. Merit Sys. Protection Bd. v. FLRA*, 913 F.2d 976, 977 (D.C.Cir.1990). The scope of the agency's obligation to bargain, however, is limited. The agency need not negotiate, *inter alia*, over a proposal that "seek[s] to regulate the conditions of employment of members of other bargaining units and supervisory personnel." *United States Dep't of the Navy, Naval Aviation Depot, Cherry Point, North Carolina v. FLRA*, 952 F.2d 1434, 1443 (D.C.Cir.1992) [hereinafter *Cherry Point*]. This case requires us to apply the quoted language from *Cherry Point*.

The Union is the exclusive representative of a unit of employees of the OPM working at its central office in Washington, D.C. On May 2, 1995, OPM informed the Union that it intended to revise its policies regarding reductions in force ("RIF"). Among other things, the Agency proposed to modify the "competitive areas" that would be used by the Agency in the event of a RIF.

The concept of a "competitive area" is an important one in the field of federal labor relations. As we have previously explained,

> a competitive area is simply a grouping of employees within an agency, according to their geographical or organizational location, who compete for job retention when a particular position is abolished or some other adverse action constituting a RIF is imposed. In such circumstances, an employee holding the affected position may be able to prevail over less senior or less qualified employees who hold different positions but are within the same competitive area.

*American Fed'n of Gov't Employees, Local 32, AFL–CIO v. FLRA,* 853 F.2d 986, 988 (D.C.Cir.1988) (footnotes omitted) [hereinafter *AFGE II*]. How an agency's competitive areas are defined affects which employees will retain their jobs in the event of a RIF.

The definition of the Agency's competitive areas is obviously an issue of great concern to the Union. Given this, the Union responded to the Agency's proposed changes by advancing its own proposal. The Union's proposal called for the Washington office to be divided into fewer competitive areas than did the Agency's proposal. The Union's proposal favored more senior and more qualified employees. The greater the number of other employees within a competitive area the more likely it will be that these employees will find juniors to displace in the event of a RIF.

A week after receiving the Union's proposal, the Agency asserted that its duty to bargain under the Statute did not extend to the Union's competitive bargaining proposal. The Union appealed that decision to the Authority. *See* 5 U.S.C. 7117(c). The Agency argued to the Authority that the Union's proposal was non-negotiable because, if accepted, it would determine the competitive areas for supervisory and managerial personnel.

Under OPM regulations, "[a] competitive area must be defined solely in terms of an agency's organizational unit(s) and geographical location, *and it must include all employees within the competitive area so defined."* 5 C.F.R. § 351.402(b) (emphasis added); *see*

*also U.S. Merit Sys. Protection Bd.,* 913 F.2d at 980 (defining "the competitive area to include only bargaining unit employees ... is clearly prohibited under OPM regulations"). A union, however, has no right to negotiate over the working conditions of supervisors. A union has the right to negotiate only for employees who are members of its bargaining unit. *See* 5 U.S.C. § 7114(a)(1). Supervisors may not belong to any bargaining unit. 5 U.S.C. § 7112(b)(1). An agency therefore has no obligation to negotiate over any proposal that directly implicates the working conditions of supervisors. Allowing the Union to force the Agency to negotiate over this proposal would violate the basic principle of labor law that a union represents employees who are members of its bargaining unit, and those employees only. *Cherry Point,* 952 F.2d at 1442. The Agency relied on the Authority's opinion in *International Fed'n of Prof'l and Technical Eng'rs and U.S. Dep't of the Navy Marine Corps Sec. Force Battalion Pac.,* 47 F.L.R.A. 1086 (1993) [hereinafter *IFPTE*]. Because the Union's proposal necessarily defined the competitive area for supervisory personnel, it was outside the Agency's duty to negotiate.

The Union countered by arguing that its proposal was negotiable because "it is not AFGE 32's intention to determine the competitive area for [supervisory] personnel." The proposal affected supervisory personnel only because OPM regulations required that competitive areas include all employees within the area. The Union relied on the Authority's decision in *National Weather Service Employees Org. and U.S. Dep't of Commerce Nat'l Oceanic and Atmospheric Admin., Nat'l Weather Serv., Silver Spring, Maryland,* 44 F.L.R.A. 18 (1992), *enforced sub nom. Department of Commerce v. FLRA,* 7 F.3d 243 (D.C.Cir.1993) [hereinafter *National Weather Service*]. In *National Weather Service,* the Authority held a competitive area bargaining proposal to be negotiable despite the effect it would have on management personnel. The Authority focused in that case on the union's intent. Because the union did not intend to regulate the conditions of employment of management personnel, the proposal was negotiable. 44

F.L.R.A. at 28. The Union argued that *National Weather Service* required the Authority to hold that its proposal was negotiable.

The Authority agreed with the Agency. After a careful analysis of relevant Authority and D.C. Circuit precedent, the Authority stated that there was no basis, either in the Statute or in precedent, for the "proposition that, in determining whether a proposal [is negotiable], it is appropriate to rely on what the union seeks to accomplish rather than what the proposal would, in fact, accomplish." 51 F.L.R.A. 491, 1995 WL 649037, at *10 (1995). Rather, the exact opposite was true. Negotiability was determined based on a proposal's actual, not its intended, effect. The Authority disavowed the contrary position it had taken in *National Weather Service*.

Once this was established, the application to the facts in this case was easy. The Union's proposal, if adopted, would determine the competitive areas for supervisors. An agency has no obligation to negotiate over proposals that directly implicate supervisory personnel. *See, e.g., Cherry Point*, 952 F.2d at 1442. The Union's proposal was therefore outside the duty to bargain.

The Authority recognized that this decision placed the Union in a " 'catch–22' situation." 51 F.L.R.A. 491, 1995 WL 649037, at *10. OPM regulations require that competitive areas be defined to include supervisors, yet agencies have no duty to negotiate over proposals that affect supervisors. The Union might thus never be able to negotiate over this important condition of employment. The Authority nevertheless dismissed the petition for review. This appeal followed.

## ANALYSIS

■ This is not a new issue for this court. This is at least the fourth time that these two parties have clashed over the negotiability of union competitive area proposals. In *Local 32, Am. Fed'n of Gov't Employees, AFL–CIO v. FLRA*, 774 F.2d 498 (D.C.Cir.1985) [hereinafter *AFGE I*], the Authority below had held that a union proposal was outside an agency's duty to negotiate because it would affect non-bargaining unit employees. In a different case presenting similar facts, however, the Authority had held that a proposal defining competitive areas was within an agency's duty to negotiate. This court noted the discrepancy between these holdings and remanded the case to the Authority to reconcile the apparent inconsistency. *Id.* at 499–500.

On remand the Authority announced again that the union's competitive area proposals did not fall within the Agency's duty to negotiate. It arrived at this conclusion by balancing "the right of the union to negotiate over the conditions of employment of bargaining unit employees and the right of the agency to set the conditions of employment of nonbargaining unit employees." *American Fed'n of Gov't Employees, Local 32, AFL–CIO and Office of Personnel Management*, 22 F.L.R.A. 478, 482 (1986).

The union contested the Authority's conclusions and its analysis in an appeal to this court. We again agreed with the union and remanded the case to the Authority. In doing so we concluded that the Authority's use of a balancing test was inconsistent with the statute. *AFGE II*, 853 F.2d at 991. We reminded the Authority of the analogous relationship between the FSLMRS and the National Labor Relations Act and urged it to consider using the private sector's "vitally affects" test in its further consideration of this question. *Id.* at 992; *see Allied Chem. & Alkali Workers of America, Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 179, 92 S.Ct. 383, 397–98, 30 L.Ed.2d 341 (1971). The "vitally affects" test has been used in the private sector to expand "the scope of mandatory bargaining subjects to include issues directly relating to non-employees or other conditions [outside the bargaining unit], so long as a sufficient nexus with the employees' interests can be shown." *Cherry Point*, 952 F.2d at 1440 (quoting CHARLES J. MORRIS, THE DEVELOPING LABOR LAW 765 (2d ed.1983)) (alteration in original).

Accepting our suggestion, the Authority began to use the "vitally affects" test to determine the negotiability of union proposals. Applying that test to the proposals involved in *AFGE I* and *AFGE II*, the Authority found that the proposals were negotiable because they "vitally affect[ed]" the working

conditions of employees in the bargaining unit. *American Fed'n of Gov't Employees, Local 32, AFL–CIO and Office of Personnel Management,* 33 F.L.R.A. 335, 338–39 (1988). The OPM appealed the decision to this court, challenging both the result and the Authority's use of the "vitally affects" test. We denied its petition.[1] We did not, however, consider whether the "vitally affects" test had been appropriately applied. We held that the law of the case doctrine and justiciability concerns barred us from considering the challenge. *United States Office of Personnel Management v. FLRA,* 905 F.2d 430, 433–35 (D.C.Cir.1990) [hereinafter *AFGE III*].

The Authority therefore went on resolving negotiability disputes by asking whether the proposal "vitally affected" the working conditions of employees in the relevant bargaining unit. *See, e.g., American Fed'n of Gov't Employees, Council of Marine Corps Locals and Dep't of the Navy, U.S. Marine Corps,* 35 F.L.R.A. 1023, 1030–33 (1990). The appropriateness of this practice went unreviewed until this court considered the question in *Cherry Point.*

In *Cherry Point,* the Authority applied the "vitally affects" test to proposals concerning promotion practices and parking policy at a military base. The Authority found the proposals to be negotiable and the Navy brought a petition challenging the Authority's "adoption, construction and application" of the "vitally affects" test. *Cherry Point,* 952 F.2d at 1436. We approved the Authority's decision to adopt the "vitally affects" test, but held that the Authority's construction and application of the test were flawed. *Id.* at 1439. Contrary to the Authority's practice, the "vitally affects" test is applicable only when the subject of the proposal is outside the scope of mandatory bargaining. *Id.* at 1440.

In addition, and of greater relevance for this case, we also held that the vitally affects test is not applicable if a union proposal "directly implicate[s]," "purports to regulate," or "seek[s] to regulate" the working conditions of supervisory personnel or members of other bargaining units. *Id.* at 1441–43. Such proposals are always non-negotiable. The present case requires us to expound on this aspect of *Cherry Point.*

In order to determine the negotiability of the union's proposal, we must first ascertain whether it "directly implicates," "purports to regulate," or "seeks to regulate" the working conditions of supervisors. If it does, the proposal is outside the Agency's duty to negotiate.

We note at the outset that the Authority has not been consistent in its application of *Cherry Point.* In *National Weather Service,* the Authority focused on the union's intent in determining whether the proposal "purported" to regulate the working conditions of supervisory personnel. If the effect on supervisors was a result of the operation of a federal regulation rather than the result of the union's intent, the Agency could not claim that the proposal "purported" to regulate the working conditions of supervisors and was for that reason outside the duty to negotiate. In *IFPTE* and in its opinion in this case, however, the Authority relied not on the union's expressed intent, but rather on the effect that the proposal would have on the working conditions of supervisory personnel.

We are not suggesting, however, that the Authority has been arbitrary or capricious. Rather, as we noted above, the Authority expressly rejected its *National Weather Service* reasoning in its decision in this case. *See* op. at p. 813, *supra* (citing 51 F.L.R.A. 491, 1995 WL 649037, at *10 (1995)). The Union argues to us now that the Authority's approach in *National Weather Service* is correct. It reads our use of the terms "purport" and "seek" in *Cherry Point* to require the Authority to determine the negotiability of a proposal by looking to the intent of the union as it is expressed in the language of the proposal itself. In the Union's view, its proposal does not say anything about the working conditions of supervisory personnel, and therefore cannot be said to "purport" or "seek" to regulate their working conditions

1. We also denied the petition of the Nuclear Regulatory Commission, co-petitioner in the case.

or "directly implicate" them. The Union contends that its proposal is therefore negotiable so long as it "vitally affects" the working conditions of members of its bargaining unit. Due to the central importance of the RIF process, the Union maintains that its competitive area proposal clearly meets that standard and is within the Agency's duty to negotiate.

The Authority disagrees. It rejects as contrary to statute, common sense, and *Cherry Point* the Union's "myopic" focus on the language of the proposal. It interprets *Cherry Point* to mean that a union proposal that "preclusively determines" or "mandate[s]" working conditions for supervisory personnel is outside the scope of the agency's duty to negotiate. In this case the union proposed a redefinition of OPM's competitive areas. OPM regulations require that competitive areas be defined so as to include all employees within the area. 5 C.F.R. § 351.402(b). Supervisors work within the competitive area that the union proposes to define. Therefore, the Authority contends that the union's proposal "purports" to regulate the working conditions of supervisors and is outside the Agency's duty to negotiate.

The Authority is correct. All the Union has to offer in support of its position is a strained interpretation of the *Cherry Point* court's use of the word "purports." Its interpretation is easily rejected. Its most obvious flaw is that it is completely counter to the approach we took in *Cherry Point* itself. In *Cherry Point* we focused, not on the language that the union used in crafting its proposal, but on the effect that the union proposal would have if the agency accepted it. We held that the proposals in question in *Cherry Point* were nonnegotiable. We did not base our holdings on the fact that the union proposals, if accepted, would have *some effect* on the working conditions of supervisors or members of other bargaining units. Nearly every bargaining proposal, if accepted, will have some effect on non-unit personnel. We found that the union's proposals were non-negotiable because, if accepted, they would *govern* the working conditions of supervisors and employees in other bargaining units. This is the distinction that

we were drawing through our use of terms such as "directly implicate," "seek to regulate," and "purport to regulate."

An analysis of the two parking proposals mentioned in the opinion makes this point clear. The first proposal is the one the union submitted. The union's proposal called "for the establishment of an 'open' parking policy for *all* employees and supervisory personnel working at the Cherry Point installation." *Cherry Point,* 952 F.2d at 1436. We held that this proposal was outside the agency's duty to negotiate. The second parking proposal, a hypothetical mentioned at oral argument and discussed in the opinion, called for "all parking at Cherry Point [to] be reserved for employees in the Local 2297 unit." *Id.* at 1441. We said that this proposal was negotiable.

The significant difference between these proposals is not that the first mentions the interests of the supervisors and the second does not or that the first impacts non-unit personnel and the second does not. The crucial difference is that the first would have bound the agency vis-a-vis the parking rights of members of other bargaining units and supervisors, and the second would not have. Had the agency accepted the second proposal, it would have had severely limited options regarding the parking privileges of these other employees and supervisors (and that is why the proposal would likely have been unreasonable, despite being negotiable) but it still could have worked with these other groups to arrive at some other arrangement. The first proposal, by contrast, would have defined parking privileges not just for members of the union's bargaining unit, but also for members of other bargaining units and supervisory personnel. Because this would be counter to basic principles of labor law, we held that the union's parking proposal was non-negotiable.

Applying this principle to the facts of this case, it is clear that the Union's competitive area proposal is not within the agency's duty to negotiate. 5 C.F.R. § 351.402(b) and *U.S. Merit Sys. Protection Bd.* require that a competitive area be defined to include all workers in an area. The Union's proposal, if implemented, would therefore govern the

competitive area not only for members of the Union's bargaining unit, but also for supervisory personnel. As the *Cherry Point* court made clear, such a proposal is outside an agency's duty to negotiate. The Authority's decision was therefore correct.

The Union emphasizes repeatedly that it does not intend to define the competitive area for supervisors. Its proposal has this effect only because of the necessary operation of 5 C.F.R. § 351.402(b). The Authority noted that this placed the Union in a difficult position, where it might never be able to force the Agency to bargain bilaterally over the definition of competitive areas. 51 F.L.R.A. 491, 1995 WL 649037, at *10.

We acknowledge that this ruling puts the Union in a difficult position. Difficult though that position may be, it seems to be contemplated by the FSLMRS. Under § 7117(a)(1) the duty to bargain in good faith does not extend to proposals that are inconsistent with federal law or government-wide regulations. This statutory provision appears to give the government the ability to make certain categories of proposals non-negotiable by adopting government-wide regulations covering those subjects. This is essentially what the government did here. The FSLMRS gives the Union the right to negotiate only for employees who are members of its bargaining unit. 5 U.S.C. § 7114(a)(1). Supervisors may not belong to any bargaining unit. *See* 5 U.S.C. § 7112(b)(1). Because of 5 C.F.R. § 351.402(b), however, the Union's proposal will determine competitive areas for supervisors as well as for members of the Union's bargaining unit. The Union's proposal therefore exceeds the negotiating authority that it is given under the FSLMRS.[2] It is inconsistent with federal law and outside the Agency's duty to negotiate. *See AFGE III,* 905 F.2d at 436 (Silberman, J., concurring).

## CONCLUSION

If adopted, the Union's proposal would govern the working conditions of supervisors at the OPM. It is therefore outside the Agency's duty to negotiate. We deny the Union's petition for review.

---

**2.** Note that the Union cannot cure its problem by altering the proposal so that it covers only members of its bargaining unit. Such a proposal would be directly inconsistent with a government-wide regulation, 5 C.F.R. § 351.402(b), and would for that reason be outside the Agency's duty to negotiate. 5 U.S.C. § 7117(a)(1).