Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 21, 2003      Decided January 9, 2004

No. 03-1083

ASSOCIATION OF CIVILIAN TECHNICIANS,
WICHITA AIR CAPITOL CHAPTER,
PETITIONER

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of a Decision and Order of the
Federal Labor Relations Authority

———

*Daniel M. Schember* argued the cause and filed the briefs for petitioner.

*James F. Blandford*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief were *David M. Smith*, Solicitor, and *William R. Tobey*, Deputy Solicitor.

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: EDWARDS, SENTELLE, and HENDERSON, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* Edwards.

Concurring opinion filed by *Circuit Judge* HENDERSON.

Edwards, *Circuit Judge*: Petitioner Association of Civilian Technicians, Wichita Air Capitol Chapter ("ACT" or "Union"), the collective bargaining agent for a unit of employees at the Kansas National Guard ("Guard"), seeks review of a negotiability determination of the Federal Labor Relations Authority ("FLRA" or "Authority"). The Union submitted a bargaining proposal to the Guard prescribing the manner in which management representatives should address Union agents during collective bargaining negotiations.

The Guard refused to bargain over the proposal and ACT appealed to the Authority. Purporting to apply this court's decision in *United States Department of the Navy, Naval Aviation Depot, Cherry Point, N.C. v. FLRA*, 952 F.2d 1434 (D.C. Cir. 1992) ("*Cherry Point*"), the Authority held that the proposal was not within the employer's duty to bargain, because it determined a condition of employment of management officials by dictating the terms they must use when addressing Union agents. The Union now petitions for review of the Authority's decision.

Under *Cherry Point*, a union proposal that purports to regulate the substantive conditions of employment of management officials or other non-unit persons is not negotiable. The Union's proposal in this case, however, merely seeks to establish standards governing interactions between Union and management representatives during collective bargaining negotiations and in grievance proceedings. The proposal does not fix conditions of employment of management officials. That managers must comply with these procedures does not render that compliance a substantive condition of employment of those personnel. Management officials often must comply with negotiated rules that benefit unit employees; but such compliance never has been construed to be a "condition of employment" for management under the Stat-

ute. Furthermore, even if the proposal is viewed as regulating a condition of employment within the meaning of *Cherry Point*, the only persons whose substantive employment interests are implicated are the members of the bargaining unit. We therefore hold that the Union's proposal is negotiable and grant the petition for review.

## I. BACKGROUND

Petitioner ACT is the exclusive representative of a unit of employees of the United States Department of Defense, National Guard Bureau, Kansas National Guard. The members of the bargaining unit are designated "dual status technicians," *i.e.*, civilian employees who must become and remain military members of the Guard unit in which they are employed and maintain the military grade specified for their positions. *See* 32 U.S.C. § 709 (2000).

During the course of collective bargaining with the Guard, ACT submitted a proposal specifying how Union officials should be addressed during collective bargaining negotiations and in grievance proceedings. The proposal stated:

A. Written communication in connection with any matter covered by Chapter 71 of Title 5, United States Code, by the employer to a bargaining unit employee who is a labor organization representative, will not, in addressing the labor representative, refer to military status or rank; the appropriate address will be "Mr." or "Mrs." or "Ms."

B. Oral communication in connection with any matter covered by Chapter 71 of Title 5, United States Code, by the employer to a bargaining unit employee who is a labor organization representative, who is on official time under 5 U.S.C. § 7131, and who is not wearing a military uniform, will not, in addressing the labor representative, refer to military status or rank; the appropriate address will be "Mr." or "Mrs." or "Ms."

C. Written communication – in connection with a grievance or arbitration under the negotiated griev-

ance procedure; Federal Labor Relations Authority, Federal Mediation and Conciliation Service, or Federal Service Impasses Panel proceeding; adverse action; or other dispute concerning a condition of employment – by the employer to a bargaining unit employee who is a party or witness in the matter, will not, in addressing the employee, refer to military status or rank; the appropriate address will be "Mr." or "Mrs." or "Ms."

D. Oral communication – in connection with a grievance or arbitration under the negotiated grievance procedure; Federal Labor Relations Authority, Federal Mediation and Conciliation Service, or Federal Service Impasses Panel proceeding; adverse action; or other dispute concerning a condition of employment – by the employer to a bargaining unit employee who is a party or witness in the matter, who is on official time under 5 U.S.C. § 7131, and who is not wearing a military uniform, will not, in addressing the employee, refer to military status or rank; the appropriate address will be "Mr." or "Mrs." or "Ms."

*Ass'n of Civilian Technicians, Wichita Air Capitol Chapter*, 57 F.L.R.A. 939, at *1-2 (2002), *reprinted in* Appendix ("App.") 13-14. ACT asserts that the proposal would ensure that collective bargaining occurs in an atmosphere of equality by prohibiting management negotiators from addressing Union officials by their subordinate military ranks. As clarified by the Union, the proposal prohibits only forms of address referring to military status or rank; the proposal does not prohibit Guard officials from addressing Union representatives by their civilian titles or by their first names. *See id.* at *2, App. 14.

The Guard refused to negotiate over the proposal, declaring it to be outside its duty to bargain under the Federal Service Labor–Management Relations Statute, which governs labor-management relations in the federal public sector. Specifically, the Guard contended that the proposal regulated

a condition of employment of management officials and was therefore nonnegotiable. ACT appealed the negotiability of the proposal to the Authority.

The Authority held that the proposal was outside the Guard's duty to bargain and dismissed the Union's petition. In reaching this decision, the Authority purported to apply *Cherry Point*, which holds that union proposals to regulate the conditions of employment of managers are outside an employer's duty to bargain. 952 F.2d at 1441-43. The Authority concluded that because ACT's proposal "regulates specific words managers may use in conducting labor-management relations aspects of their work," it "plainly establishes a job requirement applying only to management officials." *Ass'n of Civilian Technicians*, 57 F.L.R.A. at *4, App. 17. In the Authority's view, the proposal therefore "directly determines the conditions of employment of management officials" and falls outside the duty to bargain within the meaning of *Cherry Point. Id.*

ACT filed a motion for reconsideration before the Authority, arguing that the Authority had misinterpreted this court's decision in *Cherry Point*. The Authority denied reconsideration. *Ass'n of Civilian Technicians, Wichita Air Capitol Chapter*, 58 F.L.R.A. No. 71 (2003), *reprinted in* App. 25-31. ACT timely filed this petition for review challenging the Authority's decision on the negotiability of the proposal.

## II. ANALYSIS

### A. The Appropriate Standard of Review

The Federal Service Labor-Management Relations Statute ("Statute"), 5 U.S.C. §§ 7101-7135 (2000), establishes a collective bargaining regime in the federal public sector. *See generally Cherry Point*, 952 F.2d at 1438. The Statute grants federal employees the right to organize and engage in collective bargaining with respect to conditions of employment. 5 U.S.C. § 7102. Management officials and supervisors are not "employees" under the Statute, however, so they are excluded from any recognized bargaining unit. *See* 5

U.S.C. § 7112(b)(1). The Statute requires employer agencies to bargain in good faith with the agents of unit employees, 5 U.S.C. § 7114(a)(4), (b), and makes the failure to do so an unfair labor practice, 5 U.S.C. § 7116(a)(5).

The FLRA is authorized under the Statute to determine, *inter alia*, the negotiability of contested collective bargaining proposals. *See* 5 U.S.C. § 7105; *see also Library of Congress v. FLRA*, 699 F.2d 1280, 1284 (D.C. Cir. 1983) (noting that Congress has delegated authority to FLRA to construe the Statute and to determine whether a proposal falls within an employer's duty to bargain). We therefore ordinarily defer to the Authority's *reasonable* interpretations of the Statute and its resulting negotiability determinations. *See Library of Congress*, 699 F.2d at 1285*; see also Overseas Educ. Ass'n v. FLRA*, 827 F.2d 814, 816 (D.C. Cir. 1987).

In this case, no deference is due to the Authority's negotiability determination, because the FLRA purported to interpret a decision of this court. *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1085 (D.C. Cir. 2001); *United States Dep't of Justice v. FLRA*, 266 F.3d 1228, 1230 (D.C. Cir. 2001). Where an agency interprets and applies judicial precedent, rather than the statute it is charged with administering, we review its decision *de novo*. This is because "an agency has no special competence or role in interpreting a judicial decision." *New York v. Shalala*, 119 F.3d 175, 180 (2d Cir. 1997).

Even if we were to apply a deferential standard of review, however, the Authority's decision in this case would not survive scrutiny. As we explain below, the Authority's decision is not a reasonable one, because it is founded on an untenable application of the Statute and a misconstruction of *Cherry Point*. Therefore, we hold that the Union's proposal is within the Guard's statutory obligation to bargain and grant the Union's petition for review.

## B. The Negotiability Ruling

The decision in *Cherry Point* makes it clear that a union cannot bargain over the conditions of employment of non-unit

personnel. *See* 952 F.2d at 1441-43. In that case, we reviewed a decision of the Authority holding that two union proposals were within the employer's duty to bargain because they "vitally affected" the conditions of employment of bargaining unit employees. *See id.* at 1436. We reversed the Authority's ruling, finding that the proposals "[sought] to establish and regulate the conditions of employment of employees in other bargaining units and supervisory personnel." *Id.* at 1441. The proposals therefore exceeded the representation rights of the union and were not within the scope of mandatory bargaining. *See id.*; *see also Am. Fed'n of Gov't Employees, Local 32 v. FLRA*, 110 F.3d 810, 815 (D.C. Cir. 1997) ("*AFGE*") (explaining that under *Cherry Point*, a proposal is nonnegotiable if it "would *govern* the working conditions of supervisors and employees in other bargaining units").

Because "a union is the exclusive representative of employees in the certified or recognized unit, and those employees *only*," an employer has no obligation to bargain with a union over the conditions of employment of employees in another bargaining unit. *Cherry Point*, 952 F.2d at 1442. Similarly, because the Statute excludes supervisors and management officials from any authorized bargaining unit, "the same policies that prevent a union from purporting to regulate the conditions of employment of persons in other units apply with equal force to supervisory personnel." *Id.* (citing 5 U.S.C. § 7112(b)(1)). Conversely, under *Cherry Point*, a union may negotiate the conditions of employment of its own bargaining unit employees, even if those conditions affect personnel outside of that bargaining unit. *See AFGE*, 110 F.3d at 815; *Cherry Point*, 952 F.2d at 1440-41.

The Authority's decision in this case rests primarily on its determination that ACT's proposal "directly determines" the conditions of employment of supervisory personnel by dictating the forms of address they may use during negotiations and is therefore outside the duty to bargain under *Cherry Point*. *Ass'n of Civilian Technicians*, 57 F.L.R.A. at *4-5, App. 17-18. This analysis fundamentally misapplies the Statute and misconstrues our decision in *Cherry Point*. ACT's

proposal in this case relates to the terms of the interactions between union and management representatives during collective bargaining negotiations and in grievance proceedings. The clear purpose of the proposal is to ensure that employees who act as agents for members of the bargaining unit are treated as equals while serving in their representative capacities at the bargaining table or in grievance proceedings. The proposal thus does not come within the proscription of *Cherry Point*. The Union here is not seeking to regulate the substantive conditions of employment of non-unit persons; rather, it is proposing to reach agreement on how the parties' representatives deal with one another during bargaining and grievance processing.

The FLRA has long recognized that parties in a collective bargaining relationship may propose "ground rules" for negotiations or grievance processing and that such proposals fall within the statutory duty to bargain in good faith. *See, e.g.*, *375th Combat Support Group, Scott Air Force Base, Ill.*, 46 F.L.R.A. 640, 665 (1992); *Dep't of Def. Dependents Sch.*, 14 F.L.R.A. 191, 193 (1984). A proposed ground rule generally may encompass any "guide for the conduct of . . . negotiations." *Am. Fed'n of Gov't Employees*, 16 F.L.R.A. 602, 613 (1984), *remanded on other grounds*, 784 F.2d 1131 (D.C. Cir. 1986), *and aff'd*, 21 F.L.R.A. 786 (1986). And the FLRA assesses the propriety of such proposals by asking whether they are offered in good faith and whether they are designed to further the bargaining process. *See United States Dep't of the Air Force Headquarters, Air Force Logistics Command, Wright-Patterson Air Force Base, Ohio*, 36 F.L.R.A. 524, 533 (1990).

ACT's proposal prescribes how Union representatives should be addressed solely in the context of collective bargaining negotiations and in grievance proceedings. As such, it is akin to any ordinary ground rules proposal or routine regulation of negotiation procedures. Neither the Guard nor the Authority has asserted that the Union offered this proposal in bad faith. Nor can it be said that the proposal would hinder the bargaining process. To the contrary, by prohibiting references to Union representatives' subordinate military

ranks, the proposal contributes to the equality of the parties' representatives in collective bargaining and is therefore consistent with a primary goal of the Statute. *See, e.g.*, *Am. Fed'n of Gov't Employees v. FLRA*, 750 F.2d 143, 148 (D.C. Cir. 1984) (noting the statutory "goal of equalizing the positions of labor and management at the bargaining table"). Accordingly, the proposal clearly falls within the Guard's duty to bargain.

Finally, even if ACT's proposal is viewed as establishing a substantive condition of employment, the proposal clearly relates to a condition of employment of bargaining unit employees, not their managers. As such, it remains negotiable under the literal terms of *Cherry Point*. Properly understood, *Cherry Point* prohibits union proposals that directly implicate the interests of management officials by regulating the terms of the employment relationship between managers or supervisors and *their* employer. A union that advances such proposals is inappropriately attempting to bargain on behalf of individuals it does not represent. *Cherry Point* does not, however, prohibit proposals that regulate the conditions of employment of bargaining unit employees merely because those proposals have "some effect" on managers or supervisors. *AFGE*, 110 F.3d at 815.

The proposal here seeks to ensure that the employees' bargaining agents retain the full appearance of equal status at the bargaining table and in grievance proceedings. Plain and simple, this is a beneficial condition of employment for bargaining unit employees who serve as representatives in collective bargaining negotiations or in grievance proceedings. Of course, if the parties adopt the Union's proposal, management officials will be obliged to comply with the terms of the parties' agreement. But this is true of any union proposal that beneficially changes the conditions of employment of bargaining unit personnel. The fact that management personnel are obligated to conform their behavior during negotiations to these procedural requirements does not establish a substantive condition of employment for those personnel. Such compliance has never been thought to be a "condition of employment" *for management* under the Statute. We there-

fore hold that the Authority erred in holding that the proposal was not negotiable.

### III. Conclusion

For the reasons noted above, ACT's petition for review is granted. The Guard is obligated under the Statute to bargain in good faith with the Union over the proposal specifying how Union officials should be addressed during collective bargaining negotiations and in grievance proceedings.

*So ordered.*

1

KAREN LECRAFT HENDERSON, *Circuit Judge*, concurring:

> *If you'll be my bodyguard,*
> *I can be your long lost pal!*
> *I can call you Betty,*
> *And Betty, when you call me,*
> *You can call me Al!*
>
> > *You Can Call Me Al*
> > by Paul Simon

I concur in the majority's conclusion that, insofar as the Union's proposal (to require that management address unit employees by their civilian titles during labor negotiations) seeks only to set "ground rules" for negotiations and grievances, it does not regulate a "condition of employment" of bargaining unit members or of supervisory personnel. The proposal is therefore negotiable, I suppose; but the wisdom of negotiating it is a different matter. Where will it end? Will addressing negotiators by first names be permitted? Prohibited? Required? What about nicknames? Or tone or volume of voice? To engage in bargaining over such minutiae, which the majority notes has nothing to do with any substantive condition of employment, is a waste of everyone's time as this litigation manifests.

If the proposal *were* judged to regulate a substantive condition of employment of unit employees (a determination that the Authority did not expressly make but that the majority posits briefly in its alternative analysis, maj. op. at 9), then I would uphold the FLRA's determination that the proposal is nonnegotiable under *Cherry Point* because it seeks to regulate the conditions of employment of supervisory personnel as well. It seems to me that if the manner in which a bargaining unit member is addressed by a supervisor is a condition of the member's employment, then the manner in which a supervisor is required to address a member must likewise be deemed a condition of the supervisor's employment. At a minimum the Authority could reasonably reach

the conclusion that it is a condition of employment within the meaning of 5 U.S.C. § 7103(a)(13).*

―――――

\* I disagree with the majority's position that "no deference is due to the Authority's negotiability determination, because the FLRA purported to interpret a decision of this court," maj. op. at 6. The Authority's decision below construed not only the court's decision in *Cherry Point* but also the statutory term "condition of employment" in section 7103(a)(13). The Authority's interpretation of the statutory language is due deference. *See U.S. Dep't of Air Force v. FLRA*, 949 F.2d 475, 480 (D.C. Cir. 1991) ("Congress explicitly entrusted to FLRA responsibility to resolve 'issues relating to the duty to bargain in good faith under § 7117(c),' 5 U.S.C. § 7105(a)(2)(E), and specified that the Authority's decisions should be reversed only when arbitrary or capricious. . . . In keeping with the Statute's text, and corresponding Supreme Court instructions, this court upholds the Authority's negotiability conclusions when they are 'reasonable and defensible.' ") (quoting *Dep't of Treasury, Bureau of Alcohol, Tobacco, & Firearms v. FLRA*, 857 F.2d 819, 821 (D.C. Cir. 1988) (quoting *Bureau of Alcohol, Tobacco, and Firearms v. FLRA,* 464 U.S. 89, 97(1983); citing *Chevron U.S.A. Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837, 844 (1984))).